### In re Lawrence White

[779 A.2d 1264]

Nos. 98-390 & 98-391

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed June 1, 2001
Motion for Reargument Denied July 24, 2001

*John D. Hansen* and *Mary C. Ashcroft* (On the Brief), Rutland, for Appellant.

*William H. Sorrell*, Attorney General, and *Eve Jacobs-Carnahan* and *Ron Shems*, Assistant Attorneys General, Montpelier, for Amicus Curiae State of Vermont.

*Stephanie J. Kaplan*, Plainfield, for Amicus Curiae Danby Protective Association.

**Morse, J.** Applicant Lawrence White appeals two decisions of the Environmental Board regarding permits governing activities on a piece of property owned by White in the Town of Danby. The first decision revoked five Act 250 permits accumulated by White over a period of years, and the second decision granted White a corrective permit to replace the revoked permits, but imposed additional conditions on White's operations. White argues on appeal that (1) the Board improperly revoked the permits in place based on his failure to properly notice an adjoining landowner, (2) in the final revocation hearing before the Board, he was deprived of due process of law, (3) the Board improperly excluded evidence in the hearing on his corrective permit application, and (4) certain conditions imposed in the corrective permit were unreasonable. We affirm the decision of the Board revoking White's original permits, but reverse the Board's decision regarding White's corrective permit.

## I. Factual and Procedural History

White is the owner of a fifty-eight-acre parcel of property located at the junction of Route 7 and Town Road 19 in the Town of Danby. A town dump had previously existed at the site. Starting in 1980, White

applied for and was granted a series of Act 250 permits regarding the operation of a business located on the property. The permitted activities included operation of a saw mill; construction and conversion of certain buildings; storage and processing of stone and gravel, including the operation of a portable stone crusher; and construction and operation of a radio tower. One permit also allowed White to extend his hours of operation. White operated under these permits through 1995, at which time an adjoining landowner, Harris Peel, filed a petition to revoke a number of White's permits based on White's failure to provide notice to Peel in the course of applying for the permits in question.

Peel was granted party status by the Environmental Board, and, following a hearing, the Board revoked five of White's permits based on its determination that he had failed to notice Peel, despite the fact that White had not done so willfully or with gross negligence. In so doing, the Board relied on our decision in *In re Conway*, 152 Vt. 526, 567 A.2d 1145 (1989), and subsequent Board decisions. In this September 17, 1996 order, however, the Board provided White an opportunity to correct the violation, indicating that White should apply for a new permit encompassing the activity governed by the revoked permits. It also stated that White would be able to continue to operate under the revoked permits pending the resolution of his application for the new permit and any appeal to the Board regarding the new permit application.

White did not appeal from this order, but instead followed the Board's recommendation for corrective action and applied to the District Environmental Commission for a new permit. The Commission held a hearing on the application in which White's neighbors and a neighborhood group, the Danby Protective Association (DPA), participated, having been granted party status, after which it granted White's application. The new permit, however, imposed more restrictive conditions on White's operation, including prohibiting White from operating his portable stone crusher on the premises and imposing greater restrictions on his hours of operation. White appealed to the Board.

The DPA, of which it appears Peel is a member, filed a motion seeking to dismiss the appeal as well as to enforce the terms of the new permit and prevent White from continuing to operate under the revoked permits. Following a prehearing conference, White's neighbors, George and Alice Araskiewicz, Celia Hayward, Harris and Susanne Peel, and Kenneth and Christine Rush, along with the DPA

and a nearby landowner, William Buckman, were all granted party status in the appeal to the Board.

After a hearing, the Board denied the motion to dismiss White's appeal and declined to enforce the new permit, noting that its order in the revocation proceedings allowed White to continue to operate under the old permits until his appeal of the new permit was resolved by the Board, and also noting that the new permit was not yet final. With respect to the DPA's efforts to seek enforcement of the Board's order in the revocation case, or alternately stay the decision to the degree that it permitted White to continue operating under the old permits, the Board also denied relief, noting that the appeal of the new permit was not the proper context in which to seek relief. The Board indicated, however, that it would entertain the DPA's request if filed in the revocation proceedings.

The DPA then requested a hearing in the revocation proceedings, seeking final revocation of White's previous permits. The Board thereafter reopened the revocation proceedings and granted the DPA a hearing to be held the same day as the hearing on White's appeal in the new permit proceedings.[1] The Board indicated that the issue to be determined was White's compliance with the Board's original order in the revocation proceedings, which required that he comply with the terms of the revoked permits in order to continue operating under them.

White and the DPA each prefiled testimony, exhibits and objections prior to the hearing date in both the revocation proceedings and the new permit proceedings. Following the hearing, the Board issued two separate orders. The Board amended five of the conditions imposed in the new permit, but otherwise incorporated the conditions imposed by the Commission. The Board also permanently revoked the previous permits under which White had been operating. The Board based its "final revocation" both on its conclusion that White had failed to comply with the terms of its previous September 1996 decision by violating certain conditions in the prior permits while his application for a new permit was resolved and on its conclusion that the terms of

---

[1] The DPA and several of White's neighbors had previously sought and been denied party status in the revocation proceedings. Peel, who was a party to the revocation proceedings, had individually sought relief similar to that sought by the DPA, but because he failed to send a copy of his motion to White, thereby denying White the opportunity to respond, the Board declined to consider it. Nevertheless, no party raised the issue of the prior denial of party status to the DPA, and the Board did not address it when it reopened the revocation proceedings.

the "interim" revocation order (the September 1996 order) had been satisfied because White had taken the required corrective action, i.e., securing a new permit.

Following the Board's issuance of the two orders, White filed motions to alter or amend the decisions, or, in the alternative, motions for rehearing in both proceedings. The Board denied White's motions. White appealed in both cases, and we have considered the appeals together.

## II. Discussion

### A. The Revocation Case

The Board determined that by omitting Peel from the list of parties to be noticed, White had violated Environmental Board Rule 10(F)[2] and, therefore, revoked his permits under Board Rule 38(A)(2)(b), which provides "[t]he board may after hearing revoke a permit if it finds that: . . . (b) the applicant or successor in interest has violated the terms of the permit or any permit condition, the approved terms of the application, or the rules of the board." White argues on appeal, however, that his failure to list Peel was not a violation of a Board rule and therefore should be analyzed instead under Board Rule 38(A)(2)(a) (providing that the Board may revoke a permit if it determines an applicant willfully or with gross negligence submitted "inaccurate, erroneous, or materially incomplete information in connection with [a] permit application"). More specifically, he argues that he complied with Board rules by providing a list of parties to be noticed, but that it was "inaccurate and incomplete" because of the omission of Peel. Therefore, the Board should not have revoked the permits given its finding that White had not done so willfully or with gross negligence.

The State, like the Board, relies on our decision in *In re Conway*, 152 Vt. 526, 567 A.2d 1145 (1989), for the proposition that failure to list

---

[2] At the time White applied for the permits in question, Rule 10(F) provided:

> The [permit] applicant shall file with the application a list of adjoining property owners to the tract or tracts of land proposed to be developed or subdivided, unless this requirement is waived by the district coordinator. Provision of personal notice to adjoining property owners and other persons not listed in section (E) of this Rule [the municipality and the municipal or regional planning commission of the town in which the land is located, as well as any adjoining municipality if the land is located on a municipal boundary] shall be solely within the discretion and responsibility of the district commission.

Environmental Board Rule 10(F) (amended January 2, 1996 and May 22, 1996).

an adjoining landowner on a permit application voids a permit, no matter how long the permit has stood.[3] The Board has taken a similar position in other cases. See, e.g., *In re Mt. Mansfield Co. d/b/a Stowe Mountain Resort*, #5L0646-3-EB (Revocation) (Apr. 26, 1994) (denying a motion to dismiss a petition for revocation and concluding that allegation that permittee had violated a rule of the Board by failing to provide notice to an adjoining landowner was sufficient despite lack of allegation of willfulness or gross negligence), *dismissed, In re Mt. Mansfield Co. d/b/a Stowe Mountain Resort*, #5L0646-3-EB (Revocation) (June 22, 1994) (dismissing matter following adjoining landowner's motion to withdraw his petition for revocation); *In re Bickford*, #5W1093-EB (Revocation) (Apr. 22, 1993) (dismissing petition for revocation as *moot* based on determination that permit was *void ab initio* for lack of notice to adjoining landowner). This represents an over-extension and misapplication of our holding in *In re Conway*, however, and is an application of the decision to fact patterns *In re Conway* was not intended to reach or address.

In *In re Conway*, we affirmed a decision of the Board that "voided" a permit issued by the district commission and remanded for a new hearing following the appeal of the decision to issue the permit by an adjoining landowner who had not been listed on the permit application and had therefore not received notice in time to participate in the district commission proceedings. 152 Vt. at 527-28, 567 A.2d at 1145-46. In effect, the Board was vacating the decision of the commission to issue the permit and remanding for a new hearing on the permit application. Significantly, the permit application process had not run its course in that case, as the decision to issue the permit itself was being appealed to the Board.

---

[3] The State's primary argument in its amicus brief is that White's appeal of the final revocation decision should be dismissed as moot because the corrective permit issued by the Board superseded the revoked permits and White did not seek a stay of the Board's decision pending this appeal. We decline to do so. This case is distinguishable from our decision in *LaFrance v. Environmental Board*, in which a permittee's neighbor sought revocation of a permit which had been superseded by a corrective permit which had *not* been appealed and therefore was final. 167 Vt. 597, 597-98, 706 A.2d 957, 957-59 (1998) (mem.). In this case, White is appealing both the final revocation decision and the corrective permit decision. Furthermore, a permittee's appeal of a revocation decision should not be mooted by compliance with the Board's order pending the outcome of an appeal, i.e., securing a corrective permit while appealing the revocation decision. See *In re Barlow*, 160 Vt. 513, 518-19, 631 A.2d 853, 857 (1993) ("Compliance with a judgment pending appeal does not make a case moot unless the parties intended to settle, or unless it is not possible to take any effective action to undo the results of compliance.") (internal quotation marks and citation omitted).

More importantly, we agreed with the Board in that case that the *district coordinator* had acted *ultra vires* when he had allowed the *permit applicants* to decide whether to list certain adjoining property owners on their permit application and thereby to decide whether the adjoiners received notice. See *id.* at 530, 567 A.2d at 1146. We concluded that this was not the *exercise* of discretion regarding whether to provide personal notice to adjoining landowners contemplated by 10 V.S.A. § 6084 and the Board's own Rule 10(F), but rather was an impermissible delegation of discretion to the applicants themselves. *Id.* Therefore, the Board's decision to nullify the proceedings at that point in the application process was proper, not because the applicants had violated Rule 10(F) by not listing the adjoining landowners, but because the district coordinator, and the district commission by ratifying his act, *had failed to adhere to their own rules* by allowing the applicants in effect to decide who received notice. In other words, *In re Conway* does *not* stand for the proposition that an *applicant's* failure to list an adjoining landowner on a permit application somehow renders that permit void or even that it is a violation of a Board rule; rather it simply stands for the proposition that the district coordinator and the district commissions must adhere to their own established procedures for processing permit applications, and failure to do so is reversible error.

Given that *In re Conway* does not require the Board to void or revoke permits merely based on the inadvertent omission of an adjoining landowner from the list required on permit applications no matter when this oversight is discovered, we question the wisdom of the Board's interpretation of Rule 38(A)(2)(b) to allow such a result.[4] This case is instructive in this regard. As the result of the Board's decision to revoke White's permit and its requirement that he initiate an entirely new permit application process as the appropriate corrective action, several perhaps unforseen consequences ensued.

The most noteworthy consequence is the participation of several other of White's neighbors who, although they were properly noticed and did participate in the original proceedings, were allowed to submit

---

[4] We also note that notice to adjoining landowners is not even statutorily required; rather the decision to provide personal notice to adjoining landowners is vested in the discretion of the district commission. 10 V.S.A. § 6084(b); Environmental Board Rule 10(F). Furthermore, the district coordinator, after consultation with the chair of the district commission, may *waive* the requirement that the permit applicant provide a list of adjoining property owners as part of the application materials. Environmental Board Rule 10(F).

new, additional evidence regarding the impacts of White's activities on their properties in the context of the new permit proceedings. The neighbors were also granted, via their participation in the new permit proceedings, a hearing in the revocation proceedings for which they were originally *denied* party status. Lastly, White was faced with the prospect that he would be denied a permit entirely for the activities which he had been carrying on for a number of years and with respect to which he had made considerable investments. All of these consequences stemmed from the *inadvertent* omission of one adjoining landowner from an otherwise complete list.

It is difficult to imagine that the Legislature contemplated such a result flowing from 10 V.S.A. § 6090(c) (providing that Act 250 permits *may* be revoked for "violation of any conditions attached to any permit or the terms of any application, or violation of any rules of the board"). Such a result counsels against the interpretation the Board has given to Rule 38(A)(2)(b). Furthermore, if the grant of authority by the Legislature to the Board found in § 6090(c) does allow for such a result, it is unfortunate that an inadvertent omission can serve as such a pitfall to permittees years after they have completed the permitting process.

We are confronted with a difficult obstacle, however. White argues on appeal that fact patterns such as the one presented in this case should be analyzed exclusively under Rule 38(A)(2)(a) (requiring a showing that the predicate acts for revocation be done willfully or with gross negligence) and that the inadvertent omission of an adjoining landowner from a permit application does not constitute a violation of a Board rule pursuant to Rule 38(A)(2)(b). White did not raise this argument at any stage before the Board and is presenting it for the first time on appeal.

In his proposed findings of fact and conclusions of law following the initial hearing on the petition by Peel to revoke his permits, White did argue that his permits should not be revoked under subsection (2)(a) because he did not omit Peel wilfully or with gross negligence. Furthermore, White attempted to distinguish *In re Conway* and *In re Bickford* factually from his case. White did so, however, in the context of his argument that the *remedy* under subsection (2)(b) for the failure to list an adjoiner in his case should not be revocation, based on his contention that Peel had failed to adequately indicate any impact on his property from the activities. He did not raise or address the Board's application of subsection (2)(b) so as to allow for revocation based on a failure to list an adjoiner, or, alternatively, its interpretation

of *In re Conway* that such a failure somehow renders a permit *void ab initio*. In other words, White never presented the argument that inadvertent omissions of adjoining landowners from the application did not constitute a violation of a Board rule under 38(A)(2)(b). In fact, it does not appear that the issue of White's omission of Peel constituting a violation of Board Rule 10(F) was ever in dispute. At several later stages in both the revocation proceedings and the new permit proceedings, White continued to argue regarding the proper *corrective action* under Rule 38(A)(2)(b), but the issue of violation was not brought to the Board's attention.

We have repeatedly stressed that we will not address arguments not properly preserved for appeal. *In re Whitney*, 168 Vt. 209, 214-15, 719 A.2d 875, 879 (1998); *Passion v. Dep't of Soc. & Rehab. Servs.*, 166 Vt. 596, 599, 689 A.2d 459, 463 (1997) (mem.). Furthermore, "[t]o properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." *State v. Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). The very purpose of the preservation rule is to ensure that the original forum is given an opportunity to rule on an issue prior to our review. *Deyo v. Kinley*, 152 Vt. 196, 200, 565 A.2d 1286, 1289 (1989). We have been particularly solicitous regarding this requirement in the context of appeals from the Board, given that preservation is statutorily required as part of the Act 250 scheme. See *In re Denio*, 158 Vt. 230, 234-36, 608 A.2d 1166, 1168-70 (1992) (holding that even jurisdictional challenges must be raised before the Board as a prerequisite to their consideration on appeal by this Court); 10 V.S.A. § 6089(c) ("No objection that has not been urged before the board may be considered by the supreme court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). The Legislature, through § 6089(c), has restricted our discretion in the matter.

We are thus foreclosed from addressing the issue of whether the inadvertent omission of an adjoining landowner from an otherwise complete list of adjoiners constitutes a violation of a Board rule pursuant to 10 V.S.A. § 6090(c) and Rule 38(A)(2)(b). Additionally, the argument that an incomplete list does constitute compliance with Board Rule 10(F) and therefore cannot serve as the basis for revocation absent a finding that an omission was willful or grossly negligent under Rule 38(A)(2)(a) is better addressed by the Board in the first instance, where it can bring to bear its experience and

expertise in the administration of the Act 250 permit application process.

■ White also argues that he was not accorded due process of law regarding the DPA's request that the Board enforce its September 1996 order requiring him to comply with the conditions in the revoked permits in order to continue operating under them and that the Board erroneously denied his motion for a rehearing on this basis. White contends that he was entitled to the benefit of the procedures outlined in Board Rule 38 with regard to the DPA's request and that the Board failed to strictly adhere to those procedures, thereby depriving him of due process.

White's argument rests on the premise that the DPA's filing was in fact a petition for revocation rather than a request for enforcement of the Board's order. A petition for revocation triggers the procedures outlined in Board Rule 38 which include specific requirements regarding the contents of the petition, treatment as an initial pleading in a contested case and the requirement that a permittee be given an opportunity to correct "[u]nless there is a clear threat of irreparable harm to public health, safety, or general welfare or to the environment." The DPA's request, however, was not a new petition for revocation, but rather simply sought enforcement of the Board's prior order.[5] Furthermore, the Board possessed the inherent authority, if not an obligation, to determine whether White was complying with its own order. Cf. *VSEA (Health Care) v. State*, 161 Vt. 600, 601, 643 A.2d 231, 231-32 (1993) (mem.) (observing that Labor Relations Board refusal to order State to bargain in good faith under its statutory authority to issue cease and desist orders was "an abrogation of its lawful authority to enforce its orders").

There are no rules that explicitly govern the procedure for determining compliance with and seeking enforcement of the Board's *orders*. Given this absence, we must assess the process afforded to White in light of the factors enumerated by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether White was deprived of his constitutional right to due process in this case. Given that the Board provided notice to White that it would be determining his compliance with its September 1996

---

[5] We question the propriety of allowing a third party, which had been denied party status in the proceedings initially, to later seek enforcement of a Board order to which it was not a party. We will reserve judgment, however, given that neither the Board nor the parties raised the issue at the time the revocation proceedings were reopened.

order, specifically his compliance with certain conditions in his revoked permits; afforded White the opportunity to pre-file testimony and objections to the DPA's prefiled testimony; conducted a hearing in which White was able to cross-examine the DPA's witnesses; and permitted White to file a written closing argument post-hearing, we cannot say that White was deprived of due process in the Board's proceeding to determine his compliance with its order. See *Mathews*, 424 U.S. at 335 (listing factors to be considered when evaluating due process claim); *Goldberg v. Kelly*, 397 U.S. 254, 267-71 (1970) (listing elements such as adequate notice, the opportunity to present evidence, the opportunity to cross-examine witnesses, an opportunity to be represented by an attorney and a neutral decision-maker as potential components of constitutionally sound proceedings). Therefore, we will not disturb the decision of the Board making revocation of White's permits final.

## B. The Corrective Permit Case

■ White also appeals the decision of the Board affirming the conditions imposed by the District Commission, with its amendments, on White's corrective permit. He first argues that the Board erred when it excluded two of his prefiled exhibits. The first exhibit is a study of noise levels in the vicinity of White's property prepared by Audiology Associates, and the second is an excerpt from the transcript of the District Commission proceedings reflecting a portion of Peel's testimony in those proceedings.

In its order following the prehearing conference in White's appeal of the new permit conditions, the Board stated the following:

The Chair asked those parties present whether they would have objection to the Board taking official notice of the Revocation Permits and any supporting decisions. Additionally, he asked whether the parties would have any objection if the Board took official notice of the exhibits admitted by the Commission with respect to the Revocation Permits.

. . . .

This is a de novo proceeding, and the parties are expected to offer evidence anew as though there had been no hearing below. Therefore, with the exception of the items to be noticed by the Board pursuant to 3 V.S.A. § 810(4), the

parties are expected to prefile testimony and exhibits, both direct and rebuttal, in accordance with the schedule and terms of the Prehearing Conference Order.

In the last section, titled "Order," was the following provision: "The Board takes official notice of the Revocation Permits and supporting decisions. The Board also takes official notice of all exhibits admitted by the Commission in these proceedings."

White argues that the statement that the Board took official notice of the exhibits in "these" proceedings reflected its intent to take official notice of the exhibits in the *new permit* proceedings before the District Commission which were on appeal to the Board and which included the study prepared by Audiology Associates, as opposed to the exhibits from the proceedings concerning the *revoked permits*. He contends that the Board's subsequent decision to exclude the report by Audiology Associates was at odds with the Board's own order. Alternately, White argues that the report *was* an exhibit before the Commission with regard to the revoked permits, so whether the Board was taking official notice of the exhibits before the Commission in the new permit proceedings or the revoked permit proceedings is of no moment; the report was officially noticed either way.

At the hearing on White's new permit application, the Board assumed that the report had *not* been officially noticed and decided to exclude it on hearsay grounds because no one from Audiology Associates was slated to testify about the exhibit. White does not challenge the Board's ruling regarding the hearsay nature of the study, but relies purely on the Board's prehearing order to argue that the exhibit should have been admitted. He argues that the exhibit contained vital information regarding noise levels of passing traffic on Route 7 which would have changed the Board's assessment of the noise generated by White's operations.

Reading the portion of the order in which the Board states, "[t]he Board takes official notice of the Revocation Permits and supporting decisions. The Board also takes official notice of all exhibits admitted by the Commission in these proceedings," alone, as well as reading the statement in the context of the Board's previous statements quoted above, we cannot agree that the Board took official notice of the exhibits admitted by the Commission in the *new permit* proceedings. White's argument that the report was also an exhibit admitted by the Commission with regard to one of the revoked permits, permit number 1R0391-5, however, appears to have merit.

Although the exhibits originally submitted to the District Commission in support of the revoked permits are not part of the record on appeal (the record includes only the revoked permits themselves and their supporting District Commission decisions), the exhibit list from the new permit proceedings also lists exhibits which were submitted as part of the applications for the revoked permits. Listed under the exhibits for permit number 1R0391-5 is an exhibit described as "dBA Results, Audiology Associates, 12/18/90." Therefore, it appears that the Audiology Associates report *was* an exhibit admitted by the Commission in the proceedings concerning one of the revoked permits. Thus, the Board's exclusion of it was in contravention of its previous order, relied upon by White, taking official notice of exhibits admitted by the Commission with respect to the revoked permits.

Furthermore, because the Board's subsequent exclusion of the report prejudiced White, the error merits a new hearing. See V.R.C.P. 61 (error in the exclusion of evidence may not be grounds for a new hearing unless refusal to grant one is at odds with substantial justice); *Keus v. Brooks Drug, Inc.*, 163 Vt. 1, 7, 652 A.2d 475, 480 (1994) (absent prejudice resulting from evidentiary ruling, this Court will not reverse). The Board specifically identified the auditory impact of White's operations as one of the areas of concern with respect to the aesthetics of the area under statutory criterion 8. See 10 V.S.A. § 6086(a)(8) (reflecting concern for adverse impacts on the aesthetics of an area).

Although the Board had the benefit of its own site visit at which it made observations regarding noise levels generated by White's operation, as well as that of passing traffic on Route 7, White was denied the benefit of submitting a report compiling specific sound measurements taken at various locations in the vicinity of White's operation that reflected favorably on White's operation in comparison to other sources of noise in the area. Given the amount of evidence submitted in opposition to White on the issue of noise, including the testimony of Les Blomberg of the Noise Pollution Clearing House on both the quality and degree of noise generated by White's operations, and the degree of attention focused on noise levels in the Board's findings and conclusions, we cannot say that its exclusion was harmless. Additionally, White was not able to bring in this information from any other source, compare *Greene v. Bell*, 171 Vt. 280, 284-85, 762 A.2d 865, 869-70 (2000) (no prejudice where party was able to produce from another source similar evidence to that erroneously

excluded), and *Trombley v. Southwestern Vermont Med. Ctr.*, 169 Vt. 386, 396, 738 A.2d 103, 110-11 (1999) (no prejudice where excluded evidence was cumulative and duplicative of evidence elicited from other sources), especially in light of the limitations placed on the presentation of evidence by the Board in this case (the Board required that all testimony, direct and rebuttal, as well as exhibits, be prefiled; the Board also required that all objections be prefiled or they would be considered waived). Accordingly, remand for a new hearing on White's auditory impact under criterion 8 is appropriate in this case.

Because the issue may recur on remand, we will also address White's argument regarding the exclusion of Peel's prior testimony on relevancy grounds. Cf. *Russell v. Russell*, 157 Vt. 295, 305, 597 A.2d 798, 804 (1991) (addressing issue likely to recur on remand). White argues that the Board erred by excluding a portion of the transcript of Peel's testimony before the District Commission submitted as rebuttal evidence to Peel's prefiled testimony regarding sound measurements he took in the vicinity of White's property. The transcript excerpt included testimony from Peel regarding sound readings of passing traffic on Route 7 that were greater than the measurements of activities on White's property. The DPA had objected to the testimony in its prefiled objections on the basis that testimony before the Commission was irrelevant in the de novo proceedings before the Board.

The Vermont Rules of Evidence are generally applicable in administrative proceedings. 3 V.S.A. § 810(1). In fact, administrative bodies have greater latitude than courts in the nature of evidence that they may consider. *Id.*; *In re Quechee Lakes Corp.*, 154 Vt. 543, 552, 580 A.2d 957, 962 (1990). But as we have noted previously, this greater latitude "does not imply that agencies are also free to exclude relevant evidence." *In re Cent. Vermont Pub. Serv. Corp.*, 141 Vt. 284, 293, 449 A.2d 904, 909 (1982) (citation omitted).

█ As noted above, one of the issues identified by the Board as an area of focus in these proceedings was the auditory impact of White's operation on the surrounding area. The substance of White's exhibit, i.e., sound measurements taken at an adjoining property, certainly meets the test for relevance on the issue of whether White's operation was having an adverse impact on the surrounding area with respect to the generation of noise. See V.R.E. 401 (noting that relevant evidence is that having any tendency to make the existence of any consequential fact more or less probable). Although we review evidentiary rulings under Rule 401 for an abuse of discretion, see *Haynes v. Golub Corp.*,

166 Vt. 228, 236, 692 A.2d 377, 382 (1997), the Board did abuse its discretion by excluding White's exhibit on the basis of relevancy. We express no opinion on other potential bases for excluding the transcript, however; we merely note that the substance of the exhibit meets the test for relevancy.

Because we are remanding for a new hearing on the issue of the auditory impact of White's operations under criterion 8 and whether permit conditions are necessary to mitigate any impact, we need not address White's last argument that the conditions numbered 5a (limiting the hours of operation), 6 (prohibiting use of a portable rock crusher at the site), and 11 (limiting the noise levels at the site boundaries to 70 dBA) imposed by the new permit are unreasonable. The Board will necessarily be revisiting the conditions appealed by White, as they were imposed in part or in whole to mitigate the noise generated by White's operation.

*The decision of the Environmental Board revoking permits numbered 1R0391-3, 1R0391-4, 1R0391-5, 1R0391-5A, 1R0391-6 is affirmed. The decision of the Environmental Board issuing permit number 1R0391-8 is reversed and remanded for a new hearing on the auditory impact of permit applicant White's operations under criterion 8 of 10 V.S.A. § 6086.*

**Amestoy, C.J.,** dissenting. If ever resort to the law could be compared to "having a wolf by the ears," one need look no further than Lawrence White's experience with Act 250. Although the majority candidly acknowledges that it was the Environmental Board's fundamental misinterpretation of our decision in *In re Conway*, 152 Vt. 526, 567 A.2d 1145 (1989), that led to the revocation of White's longstanding Act 250 permits and the otherwise baseless requirement that he initiate an entirely new permit process, today's decision denies the benefit of its holding to White because he allegedly failed to preserve the issue below. Because I believe the majority's overly rigid application of the "preservation" rule compounds the utter unfairness of a process that virtually devoured the applicant, I respectfully dissent.

The extraordinary procedural maze in which White found himself has been admirably summarized in the majority opinion, but a few salient points bear emphasis. First, the filing of a petition by the adjoining landowner (Harris Peel) to revoke White's Act 250 permits based on White's failure to provide notice to Peel in applying for the permits in question came *eight years* after the first relevant permit

was granted. Second, in response to the claim that White's failure to provide notice was either wilful or grossly negligent, the Board concluded:

> In each instance, an effort was made to identify the adjoining landowners and then list them as part of the applications. This effort was complicated by the Town of Danby not having a tax map which identifies ownership of property. While these efforts were faulty, the omission of Peel was not intentional nor was it so flagrant as to constitute the failure to exercise even a slight degree of care.

Third, among the "perhaps unforeseen" consequences acknowledged by the majority was that neighbors who had participated in the original permitting process, and who were later *denied* party status in the revocation hearing, were ultimately allowed to participate in the joint revocation/new permit proceeding.

The more fundamental point, however, concerns the majority's conclusion that we are "foreclosed" from addressing the Board's erroneous overextension of *Conway*. The majority concedes that White did argue below that the Board incorrectly applied Rule 38(A)(2) and further that he addressed arguments to both subsections (a) and (b). As to subsection (a), White contended that his permits should not be revoked because he did not omit Peel either wilfully or with gross negligence. As to subsection (b) — while the majority is correct that White argued below that his innocent failure to list an adjoining landowner should not lead to the draconian step of revocation (implicitly conceding that such failure could be considered a violation of 2(b)) — it takes an extraordinarily cramped view of White's argument to conclude that he therefore failed to preserve his challenge to Rule 38(A). This is especially so where White filed proposed findings of fact and conclusions of law which urged the District Commission to conclude that "the facts in *Conway* are so significantly different from those in this proceeding, that a departure from its reasoning is justified." In this regard, White specifically noted that it was the Commission in *Conway* that erroneously denied the adjoining landowner party status, not the inadvertent omission of the applicant, and that the permit application process in *Conway* was ongoing, not final for over eight years, as in this case.

To be sure, White did not precisely assert that the inadvertent omission of the adjoining landowner from his application was not a violation of a Board rule. Yet the essence of the argument was there,

and was certainly stated with sufficient clarity to fairly alert the Commission and the Board to the question whether *Conway* controlled in these circumstances. This was enough to preserve the issue for appellate review. See *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) (matters not "fairly presented" to trial court are not preserved for review); *State v. Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994) (purpose of preservation rule is to afford trial court "a fair opportunity to rule" on issue before it reaches this Court).

The final consequence of today's ruling is that an undisputed error by the Board — fairly raised and asserted below — remains uncorrected, and White is left with a result that is neither fair nor compelled by law. Accordingly, I would reverse the judgment of the Board.