2008 VT 82

**In re Christopher M. SHAIMAS**

[958 A.2d 646]

No. 06-492

¶ 1. June 10, 2008. Petitioner Christopher M. Shaimas appeals from a superior court order denying his petition for postconviction relief. Petitioner contends that the court erred in rejecting his claim that a material misunderstanding concerning parole eligibility rendered his guilty plea involuntary. We affirm.

¶ 2. In June 1994, petitioner was charged with aggravated sexual assault on a minor. The information alleged that petitioner had also been previously convicted of sexual assault. Conviction on the aggravated sexual assault charge carried a maximum sentence of life imprisonment. At a change-of-plea hearing in October 1994, defendant entered a plea of guilty under an agreement in which the State agreed to recommend a sentence of fifteen to twenty-five years and petitioner remained free to argue for a lesser sentence. During the Rule 11 colloquy conducted by the court, petitioner acknowledged that his plea was not in response to any threats or promises. See V.R.Cr.P. 11 (requiring court to address defendant personally in open court before accepting guilty plea). No mention of petitioner's parole eligibility was made by the court or any of the parties.

¶ 3. At the sentencing hearing in January 1995, the State recommended a sentence of fifteen to twenty-five years, as agreed, while petitioner argued for a ten-year minimum. The probation officer who had prepared the presentence investigation report recommended a sentence of fifteen to fifty years. Much of the testimony at the hearing centered on petitioner's need for counseling while incarcerated. The clinician who had conducted an earlier psychosexual evaluation of petitioner recommended that he undergo both violent-offender and sex-offender treatment. The probation officer testified that the recommended treatment programs each required four or five years to complete and were normally taken consecutively. When asked how long it would take petitioner to complete the recommended programming from the time he entered the facility, the officer explained that it was his "suspicion" petitioner could be "assessed and evaluated immediately, and probably begin work fairly promptly" so that it would require approximately ten years for petitioner to complete the programs and be considered for parole. The officer went on to explain, however, that his recommendation of a fifteen-year minimum was based on an assumption that a person might be required "to sit for period of time before getting involved in treatment" and that, with time-served and good-time credit, petitioner could be released in twelve years. Thus, a ten-year minimum sentence was — in the probation officer's view — inadequate. In imposing the recommended minimum sentence of fifteen rather than ten years, the trial court explained that petitioner was still a relatively young man who presented a "high level of danger" and that it

was unlikely he could "successfully complete programs and alter his behavior with a reasonable degree of assurance" under the lesser term.

¶ 4. Seven years later, in March 2002, the Department of Corrections (DOC) adopted a three-level classification system to determine prisoners' eligibility for programming. Under the new system, petitioner was classified as a Level C offender, a classification reserved for certain violent offenders with a high risk of future criminality. Inmates in this category generally must serve more time before becoming eligible for programming, with the result that petitioner's case plan did not anticipate the completion of programming until his maximum release date in April 2011. Petitioner had apparently not engaged in any treatment programs up to that time. According to DOC's director of classification, petitioner's participation in programming under the old system would have been determined by space and availability, and given the high demand there was "no reasonable expectation" that petitioner would have had the opportunity to complete programming and become eligible for parole by his minimum release date.

¶ 5. In May 2005, more than three years after his classification under the new system, petitioner filed a grievance, claiming — as summarized by DOC — that he "should have already participated in program and should be released at his minimum." The grievance was denied in June 2005. Thereafter, petitioner filed a post-conviction-relief petition, alleging that he entered his plea "with the knowledge and understanding that he would be eligible for programming in advance of his minimum and that he would have a chance for parole and/or conditional reentry when he reached the minimum of his sentence." Petitioner thus claimed that he was materially misinformed about his parole eligibility and that his plea was therefore involuntary and should be vacated.

¶ 6. The parties thereafter filed cross-motions for summary judgment. The State argued that there was no evidentiary support for petitioner's claim that he was induced to enter the plea by a promise that he would have the opportunity to complete programming and become eligible for parole by his minimum release date. Petitioner countered with several affidavits, including one from his trial counsel stating that, based on his discussions with the probation officer and the prosecutor, "it appeared there was a meeting of the minds that . . . sex offender treatment was to be available prior to [petitioner's] minimum release date." Counsel indicated that he had affirmatively advised petitioner to enter a guilty plea based on this understanding. Petitioner also filed an affidavit, stating that he had agreed to the plea on the basis of counsel's advice, and would not have done so had he "known that [he] would not have the opportunity to participate in programming" in time to achieve parole by the minimum release date.

¶ 7. The trial court issued a written decision in October 2006, in favor of the State. The court found that petitioner's trial counsel had advised him that "programming would likely be available to him before he reached his minimum" but concluded that there was no "material mistake" to render the plea involuntary because the information petitioner received was "accurate" at the time it was rendered. As the court explained, "[a] change in Corrections programming administration does not retroactively make [p]etitioner's understanding erroneous." Accordingly, the court found no grounds for relief, and denied the petition. This appeal followed.[1]

---

[1] We observe in passing that the premise of the court's finding that "[p]etitioner's counsel . . . told him that programming would likely be available to him before he reache[d] his minimum" appears from the

¶ 8. We review summary judgment by applying the same standard as the trial court, upholding such a judgment when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *In re Barrows*, 2007 VT 9, ¶ 5, 181 Vt. 283, 917 A.2d 490. In a post-conviction relief proceeding, the petitioner bears the burden of proving by a preponderance of the evidence that fundamental errors rendered the conviction

---

record to be subject to dispute in at least two respects. First, as noted, DOC's director of programming stated in an affidavit that, at the time of sentencing, petitioner "could have had no reasonable expectation that he would be released at his minimum." The parties have not directly challenged the court's finding that the information allegedly conveyed to petitioner was "accurate," however, and we therefore accept the finding. More fundamentally, apart from counsel's and petitioner's own self-serving allegations, the objective evidence to support the court's finding is far from conclusive. At the change-of-plea hearing, petitioner denied that he had been made any promises to enter the plea, and at the subsequent sentencing hearing the discussion concerning programming and parole eligibility contains no clear statement establishing that petitioner had relied on a promise of early access to programming in entering the plea. In his affidavit, trial counsel claimed that the information he conveyed to petitioner was based on conversations with the probation officer, but the latter testified merely to a "suspicion" that petitioner could begin programming fairly promptly. Thus, the record does not appear to demonstrate indisputably that counsel was assured that programming would be available before petitioner reached his minimum, or that counsel so informed petitioner. Because the issue does not ultimately affect our decision, however, we need not consider it further.

or sentence defective. See *In re Carroll*, 2007 VT 73, ¶ 8, 182 Vt. 571, 933 A.2d 193 (mem.). The burden of demonstrating prejudice resulting from such error falls on the petitioner. *Id.* With respect to petitioner's claim here, we have recognized that "misinformation regarding his parole eligibility may provide a basis for a successful attack on the voluntariness of a plea." *In re Moulton*, 158 Vt. 580, 584, 613 A.2d 705, 708 (1992). Again, however, it is petitioner's burden to prove that he entered the plea "while reasonably relying on a material misunderstanding regarding his parole eligibility, and that such misunderstanding worked to his prejudice." *Id.*

¶ 9. Petitioner contends that the court erred in finding that, because the plea was based on an accurate understanding at the time that programming would be available to him before he reached his minimum, there was no material misrepresentation to render the plea involuntary. We find no error. As other courts have recognized, information concerning parole eligibility is "inherently imprecise" owing to any number of variables such as the petitioner's conduct while in prison, changes in the makeup or philosophy of parole boards, and "changes in the law." *McAdoo v. Elo*, 365 F.3d 487, 495 n.6 (6th Cir. 2004); accord *Ex parte Evans*, 690 S.W.2d 274, 278 (Tex. Crim. App. 1985) (noting that parole eligibility is inherently fluid and that a " 'petitioner's behavior and legislative and administrative changes in parole eligibility rules may affect this date' " (quoting *Hill v. Lockhart*, 731 F.2d 568, 572 (8th Cir. 1984)).

¶ 10. As any number of courts have recognized, therefore, a plea based on parole laws in effect at the time is not rendered involuntary by a change in those laws. See, e.g., *Bush v. Neet*, 400 F.3d 849, 852 (10th Cir. 2005) (finding no basis for habeas relief where petitioner entered a plea based on his understanding that

parole board interpreted statutory scheme to require release after serving half of the minimum term, or in 1997, and board later altered interpretation to preclude certain sex offenders, thereby altering release date to 2016); *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (holding that changes in Louisiana law lengthening time necessary to become eligible for commutation of sentence did not render plea involuntary where plea was based on petitioner's reliance on earlier policy); *Self v. Blackburn*, 751 F.2d 789, 793 (5th Cir. 1985) (holding that, where advice to petitioner concerning parole eligibility was "accurate . . . at the time it was made," the fact that parole conditions had changed "does not make the plea involuntary for there was no factual misrepresentation"); *Green v. State*, 759 S.W.2d 211, 212 (Ark. 1988) (where petitioner was accurately informed about time to be served before becoming eligible for clemency, subsequent lengthening of period "did not render his plea involuntary").[2]

____

[2] These decisions are to be distinguished from cases holding that the retroactive application of rule changes which increase an inmate's sentence by reducing the availability of earned or good-time credit violate the constitutional prohibition against ex post facto laws. See, e.g., *Lynce v. Mathis*, 519 U.S. 433, 446-47 (1997); *Weaver v. Graham*, 450 U.S. 24, 33 (1981). Petitioner does not claim that retroactive application of the DOC classification system violates the Ex Post Facto Clause, nor would such a claim likely be availing. See *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995) (noting that the focus of an ex post facto inquiry is not on whether a change produces "some ambiguous sort of disadvantage" or "affects a prisoner's *opportunity* to take advantage of provisions for early release . . . but on whether [it] increases the penalty by which a crime is punishable" (quotations omitted)).

¶ 11. Petitioner cites no decision, nor have we found any, invalidating a plea as involuntary based on subsequent changes to rules affecting parole eligibility. Accordingly, consistent with the weight of authority, we find no grounds to conclude that petitioner's plea was involuntary or should be vacated.

¶ 12. On appeal and at oral argument, petitioner advanced the alternative claim that, even if the plea was not involuntary, the State had failed to afford him the benefit of his bargain in that it had failed to make programming available to petitioner in a timely fashion that would have allowed him to complete programming and become eligible for parole by his minimum release date. See *Santobello v. New York*, 404 U.S. 257, 262 (1971) (when a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"); *State v. Coleman*, 160 Vt. 638, 640, 632 A.2d 21, 22 (1993) (mem.) (plea agreements are contractual in nature and a defendant may demand specific enforcement of its terms). Apart from the fact that this argument was not clearly raised below, however, it is plainly moot. See *In re White*, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001) (to properly preserve an issue for appeal a party "must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it").

¶ 13. Petitioner claims to have entered his plea based on the promise that he would be afforded prompt access to programming, thereby allowing him to complete an estimated ten-year treatment program and become eligible for parole by his minimum release date. Yet petitioner waited more than *ten years* after his sentencing to claim a violation of the agreement in June 2005, at which point he had nearly reached his minimum release date, which has now admittedly passed.

Accordingly, any ability a court might have had to specifically enforce the agreement has been lost, and the issue has become effectively moot. See *In re Myers*, 130 Vt. 130, 131, 287 A.2d 565, 566 (1972) (holding that post-conviction-relief petition seeking to enforce alleged agreement to grant parole after petitioner had served one-third of sentence was moot because petitioner had already served two-thirds of his sentence and had been paroled). Although a court may allow withdrawal of a plea rather than specific performance for breach of a plea agreement, such relief must be "appropriate [to the] facts of each case." *In re LaRose*, 141 Vt. 1, 3-4, 442 A.2d 467, 469 (1982); see *Santobello*, 404 U.S. at 263 (state court is in best position to determine whether circumstances warrant withdrawal of plea for breach of plea agreement). Where, as here, a petitioner has done virtually nothing to enforce a plea agreement until — after more than ten years — any benefit he might have derived from it has expired, we can not conclude that withdrawal of the plea is necessary to correct an injustice or a fundamental error resulting in prejudice. Accordingly, we discern no basis to disturb the judgment.

*Affirmed.*