*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-342

JANUARY TERM, 2015

In re J.D., Juvenile

}
}
}
}
}
}
}

APPEALED FROM:

Superior Court, Windham Unit,
Family Division

DOCKET NO. 59-7-13 Wmjv

Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Mother appeals from the trial court's disposition order, which directed that J.D. remain in the custody of the Department for Children and Families (DCF) and adopted concurrent goals of reunification with father or, alternatively, termination of parental rights and adoption. We affirm.

J.D. was born in November 2006. In July 2013, she was taken into emergency custody in Massachusetts and subsequently transferred to DCF custody in Vermont. In July 2013, DCF filed a petition alleging that J.D. was a child in need of care and supervision (CHINS). Parents agreed that J.D. was CHINS between certain dates because she was without proper parental care and they agreed that she should remain in DCF custody pending disposition.

In connection with the CHINS proceeding, parents admitted to the following facts. J.D. was in mother's sole custody and residing in Vermont when mother was caught shoplifting while J.D. was present. Mother was on probation and pre-approved furlough at the time and she has numerous other criminal convictions, including at least one felony conviction. Mother fled the store with J.D. and evaded police. On June 14, 2013, mother was charged with felony escape and retail theft. As indicated above, in July 2013, Massachusetts authorities filed an emergency request for temporary legal custody of J.D., alleging that she was a child in need of care and protection because she had been abandoned by mother, who was on escape status from the Vermont Department of Corrections, and she had been neglected by father due in part to his ongoing drug use. Massachusetts authorities had received a report that father was using heroin, sleeping until late in the afternoon, and not meeting J.D.'s needs. Vermont DCF received a report voicing similar concerns. A DCF social worker spoke with mother during this time but mother refused to meet with the social worker or turn herself in to authorities. Mother was arrested in Vermont on July 24, 2013, and she has been incarcerated since that date.

The court adjudicated J.D. as CHINS in November 2013 and ordered that she remain in DCF custody. DCF filed a disposition case plan in December 2013 and an updated permanency case plan in August 2014. The disposition case plan set a goal of either J.D.'s reunification with father or adoption by June 2014, noting that J.D. had been in custody since July 2013. The plan explained that mother was incarcerated and unable to provide for J.D., and given mother's

current lengthy incarceration status, it was unlikely that she would be able to resume parenting J.D. by June 2014. As indicated above, the plan also recognized that father was an admitted drug user who, without treatment, could not provide appropriate care and supervision for J.D. The updated case plan continued the same goal of adoption or reunification with father but it extended the estimated date for achieving the case plan goal to March 2015. This plan recognized that mother remained incarcerated, and that her minimum and maximum release dates were in April 2015. It noted that father continued to use heroin.

The disposition hearing occurred over the course of several months (January 2, May 21, July 23, and September 10, 2014). Mother and father both argued primarily for a placement with J.D.'s maternal grandmother, although father indicated on the last hearing date that he would be in a position to take custody of J.D. within days. The court issued its disposition order at the conclusion of the hearing in September 2014. The court recognized at the hearing that mother was not in a position to care for J.D. as mother was in jail; it found that father and J.D.'s grandmother were similarly not in a position to take J.D. into their custody for various reasons. The court also noted that J.D. had made clear that she did not want to be alone with any of her family members, and this evidence reinforced the court's conclusion that the disposition case plan should be adopted as written. The court expressed some concern that the plan did not provide for permanency for J.D. as quickly as one might like, given that J.D. had already been in custody for more than a year, but the court accepted the plan, as updated by the permanency case plan filed at the end of August. The court found that the evidence established that the disposition case plan was consistent with the case plan goal, and the plan had established appropriate parent-child contact for both parents. It thus ordered that DCF continue to have legal custody of J.D., with parents to have contact with J.D. as agreed between parents and DCF. The order indicated that the concurrent permanency goals of reunification with father or, alternatively, adoption were established. Mother appealed from this order.

Mother first argues that the family court had no authority to issue a disposition order that contained "multiple and contradictory permanency goals." She objected to the concurrent goals of the plan as proposed by DCF but did not object to the propriety of case plans having concurrent goals as a general proposition. In particular, she now argues that the applicable statute requires that a court may impose only a single permanency goal for disposition, 33 V.S.A. § 5318, and that concurrent goals of reunification and adoption are inherently conflicting. Mother did not raise this issue below. To the contrary, she advocated for "multiple and contradictory permanency goals," seeking to be added herself as part of the concurrent-disposition plan along with father and adoption. Because mother raises her argument for the first time on appeal, we do not consider it. See In re White, 172 Vt. 335, 343 (2001) (reiterating that "[t]o properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it," and Supreme Court "will not address arguments not properly preserved for appeal") (internal quotation marks omitted); see also V.R.A.P. 28(a)(4)(A) (appellant's brief should explain "the issues presented" and "how they were preserved").[*]

---

[*] Appellant argues that even if the objection to a disposition order reflecting concurrent goals was not preserved, we should reverse because the court's approval of concurrent disposition goals was plain error. See In re D.C., 157 Vt. 659, 660 (1991) (mem.) (recognizing that "we can reverse on an unpreserved issue in exceptional cases" where "the error . . . is so obvious, grave, and serious as to warrant reversal"). At oral argument, counsel acknowledged that judicial approval of concurrent-disposition goals is not unusual in current practice. Given

Mother's second argument suffers from the same flaw. Mother asserts that the State was required to prove that she was unfit by clear and convincing evidence because the disposition order was "akin to a termination of parental rights." Mother did not argue below that the court needed to make a finding that she was unfit by clear and convincing evidence in issuing its disposition order. We therefore do not address this argument. We note, however, that the court did not terminate mother's rights. The disposition order provides for, among other things, contact between mother and J.D., and it is evident that mother retains her residual parental rights. There is no dispute, moreover, that mother was in no position to care for J.D. at the time of the disposition hearing as she was incarcerated and was expected to remain incarcerated potentially until April 2015, although an earlier release date was possible.

Affirmed.


BY THE COURT:


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice

---

that, we cannot say that any error, if there was any at all, was so obvious as to warrant reversal in the absence of a specific and clear objection before the trial court.