2003 VT 94

**In re Liko CALDERON**

[838 A.2d 109]

No. 02-149

¶ 1. October 29, 2003. Defendant appeals from a superior court judgment denying his motion for post-conviction relief. He contends the court erred in denying the motion because: (1) in accepting an earlier no-contest plea to several misdemeanor counts, the district court failed to substantially comply with V.R.Cr.P. 11(c) & (d); and (2) he was

misinformed about the deportation consequences of his plea. We affirm.

¶ 2. The record evidence may be summarized as follows. In May 1996, defendant — an Ecuadoran national — pled guilty in Chittenden District Court to one count of domestic assault and was placed on probation. In August and September of the same year, he was charged with four additional counts stemming from separate incidents involving the same victim. The charges included aggravated domestic assault, kidnapping, violation of probation, and violation of conditions of release. In November, defendant entered into a written plea agreement with the State. As set forth in the agreement, which was signed by defendant and his attorney David Nicholson, the State agreed to drop the aggravated assault and kidnapping charges in return for a plea to three counts of misdemeanor domestic assault and one count of simple assault. The State also agreed to dismiss the violation of conditions charge and defendant agreed to admit the violation of probation. Based on the plea, the State agreed to recommend a sentence of sixteen months to five years with a referral to the Intensive Domestic Abuse Program (IDAP).

¶ 3. Prior to entering his plea with the State, defendant discussed the plea agreement with his attorney Nicholson. Roberta Pratt, his wife and a native English speaker who is fluent in Spanish, was present and translated during defendant's meetings with his attorney where the terms of the plea agreement were discussed. At the November change of plea hearing, defendant appeared with his attorney and a court-appointed Spanish interpreter. The deputy state's attorney stated that she had agreed to allow defendant to plead to misdemeanors because defendant had a son in the United States and a felony conviction would result in deportation. In response to questioning from the court, attorney Nicholson indicated that he had reviewed the signed plea agreement with defendant, and that defendant had agreed to plead no contest to the amended charges. The prosecutor set forth a detailed factual basis for the plea, and attorney Nicholson stated that defendant acknowledged his behavior was inappropriate and against the law. Accordingly, he was sentenced to eighteen months to five years to be served in the IDAP program. Defendant had agreed to increase his minimum sentence to eighteen months to accommodate the requirements of IDAP.

¶ 4. In September 2000, the Immigration and Naturalization Service commenced removal proceedings against defendant under the Immigration and Nationality Act (INA) on grounds that he had been convicted of an aggravated felony. In January 2001, the immigration judge found that defendant's misdemeanor domestic assault convictions were aggravated felonies under the INA because they contained an element of physical force and involved a sentence of one year or more. The judge therefore ordered that defendant be deported. Defendant has appealed that ruling.

¶ 5. Defendant subsequently filed a petition for post-conviction relief in Chittenden Superior Court, seeking to vacate the three domestic assault convictions on the ground that he was not informed of the deportation consequences of his plea. In his amended petition, he claimed that his counsel misinformed him of the immigration consequences of his plea, and that the district court failed to comply with V.R.Cr.P. 11(c) and (d) at the change of plea hearing. The petition did not challenge defendant's earlier domestic assault conviction.

¶ 6. The court held an evidentiary hearing on the PCR petition in October 2001. Defendant testified that he had been concerned about deportation but that his attorney had said, "don't worry," he would be okay if he pled to misdemeanors. Attorney Nicholson also testified, stating that he had extensive con-

versations with defendant, which defendant's wife translated, about the charges and the plea agreement prior to the change of plea hearing, that he informed defendant about the rights he was waiving, and that he believed defendant understood the nature of the charges and the consequences of the plea. Concerning deportation, Nicholson testified that he had informed defendant a plea to misdemeanors would reduce the chance of deportation, but had never guaranteed that defendant would not be subject to deportation if he pled to the reduced charges.

¶ 7. Following the hearing, the court issued a written decision, finding that the credible evidence did not support defendant's claim that he was led to believe he could avoid deportation altogether with a plea to the reduced charges. The court also found that defendant was aware of the nature of the charges, and that he failed to carry his burden of demonstrating that any failure in the Rule 11 colloquy had prejudiced him. In denying a subsequent motion to amend the judgment, the court issued a lengthy order, finding that, despite technical omissions, the district court had substantially complied with Rule 11 requirements, and that the plea was knowing and voluntary. In this regard, the court noted that, although defendant claimed the Rule 11 colloquy was inadequate, he did not assert that his plea was involuntary as a result of any of the asserted omissions, but rather premised the claim on his failure to understand the possible deportation consequences of his plea, a claim the court found unsupported. Thus, the court found no basis to amend its earlier decision. This appeal followed.

¶ 8. The findings in a post-conviction relief decision will not be disturbed absent clear error, and even when the evidence conflicts, we will defer to the superior court in this regard. *In re Quinn*, 174 Vt. 562, 563, 816 A.2d 425, 427 (2002) (mem.); *State v. Bristol*, 159 Vt. 334, 336-

37, 618 A.2d 1290, 1291 (1992). If there is any credible evidence to support the findings, and the court's conclusions follow from those findings, this Court will uphold the superior court's decision. *In re Plante*, 171 Vt. 310, 313, 762 A.2d 873, 876 (2000).

¶ 9. On appeal, defendant renews his claim that the court's "complete" failure to engage him in the required Rule 11 colloquy rendered the plea involuntary as a matter of law. As we have recently reaffirmed, however, in a PCR proceeding "the burden is on defendants to prove that [the] trial court[] did not substantially comply with V.R.Cr.P. 11 in accepting their plea agreements *and* that this noncompliance prejudiced their pleas." *State v. Boskind*, 174 Vt. 184, 193, 807 A.2d 358, 366 (2002) (emphasis added) (citing *In re Thompson*, 166 Vt. 471, 475, 697 A.2d 1111, 1113 (1997)). Here, the record supports the court's conclusion that defendant failed to claim or demonstrate any prejudice resulting from the alleged Rule 11 omissions.

¶ 10. The dissent disagrees with the trial court's factual findings, specifically that defendant's wife was "fluent in Spanish" and that attorney Nicholson fully explained to defendant the consequences of his plea and the rights he was giving up by pleading no contest to the amended charges. The dissent believes defendant's counsel's testimony that he advised his client of his rights cannot be relied upon because "Nicholson does not speak Spanish and the interpreter he used, Roberta Pratt, did not testify at the PCR hearing." *Post*, at ¶ 24. Thus, the dissent suggests Nicholson cannot provide the evidentiary foundation necessary for the trial court to find that defendant understood his rights and that his plea was knowing and voluntary. We disagree. We find sufficient evidence to support the trial court's ruling and we affirm.

¶ 11. Defendant's claim that the court failed to engage him in an adequate Rule

11 colloquy is based in part on the assertion that he did not understand the options available to him and the consequences of his plea agreement. The evidence does not support this claim, however. While at one point in his testimony before the PCR court attorney Nicholson stated that Roberta Pratt's Spanish was not as good as that of the court appointed interpreter, he also testified Ms. Pratt's Spanish was "pretty good," and that she "had good command of the Spanish language." Defendant himself testified that Ms. Pratt's Spanish was "very good." Further, attorney Nicholson testified that he had "extensive conversations" with the defendant and Roberta to discuss defendant's legal situation. Notwithstanding the dissent's claim to the contrary, Nicholson never testified that defendant did not really understand what was going on at his change of plea hearing. Thus, there is credible evidence to support the court's conclusion that Ms. Pratt was an adequate and accurate interpreter.

¶ 12. The court further found that Ms. Pratt was on good terms with defendant, was supportive of him, understood the nature of the charges against him, and "displayed a high degree of concern in the outcome of petitioner's case." These findings are supported by the testimony of attorney Nicholson, who stated that Ms. Pratt had a high degree of concern, was interested, had an understanding of the allegations that had been made against defendant with respect to the criminal charges, and that she presented herself as an "intellectually-aware person," a "very intelligent woman who was well-educated." Further evidence of the defendant's understanding of his options is found in State's Exhibit #11, the transcript of the sentencing hearing that followed his change of plea. At that time, the minimum sentence was increased from sixteen months to eighteen months because participating in the intensive domestic abuse program, IDAP, required a minimum eighteen-month sentence. When asked by the court at sentencing if defendant was willing to agree to the sentence, attorney Nicholson explained that, with the assistance of the interpreter provided and Roberta Pratt, they had gone over the presentence report with defendant and discussed the issue, and that defendant understood the reason for the increase in the minimum term.

¶ 13. Though defendant testified that the interpreter provided for his change of plea hearing was "no good," and that he didn't understand her, he admitted he never complained to his attorney or to the court. While he claimed his attorney told him deportation would be "no problem," his attorney denied any such promises. It was for the PCR court to determine the credibility of the witness. See *State v. Hagen*, 151 Vt. 64, 65, 557 A.2d 493, 494 (1989) (trier of fact has sole discretion to determine weight of evidence, credibility of witnesses, and persuasive effect of testimony). The court's findings are supported by the evidence. From these findings, the trial court's conclusions that defendant understood the options available to him in his legal proceedings, had the benefit of adequate counsel and adequate interpreters, and failed to show how the trial court's failure to fully comply with the requirements of Rule 11 in any way prejudiced the plea he made, were reasonable.

¶ 14. Defendant's plight can be distinguished from the Rule 11 cases cited by the dissent. *Post*, at ¶ 20. Here, defendant did not claim that he was coerced into making the plea, or that he did not understand the charges, or that he did not know he had a right to a jury trial, or that he was waiving his privilege against self-incrimination. Instead, he claims prejudice only with respect to a collateral matter — that he did not understand the possible deportation consequences of his plea. The PCR court found that attorney Nicholson had adequately advised de-

fendant that the reduction in the charges from felony to a misdemeanor would reduce the chances of his deportation, but not eliminate them all together.

¶ 15. Even if defendant had misunderstood the potential deportation consequences of his plea, he failed to show that a different Rule 11 colloquy would have had any bearing on his decision. Nothing in the record supports the claim that defendant would not have entered the plea absent counsel's advice regarding deportation. As the court here noted, defendant also accepted the plea to avoid jail, and faced a potential maximum term of thirty-six years on the original felony charges. A trial would not have eliminated the risk of deportation. See *In re Resendiz*, 19 P.3d 1171, 1187 (Cal. 2001) (in holding that counsel's misadvice about deportation consequences of plea was not prejudicial, court noted defendant's choice was not "between, on the one hand, pleading guilty and being deported and, on the other, going to trial and avoiding deportation. While it is true that by insisting on trial petitioner would for a period have retained a theoretical possibility of evading the conviction that rendered him deportable and excludable, it is equally true that a conviction following trial would have subjected him to the same immigration consequences."). We conclude, therefore, that the court's decision to deny the petition based on the absence of prejudice was sound.

*Affirmed.*

¶ 16. **Johnson, J.,** dissenting. I cannot agree with the majority that the complete absence of a Rule 11 colloquy with a defendant who did not speak English was a mere technical violation that did not affect the voluntariness of defendant's plea. Neither can I agree that the majority opinion correctly applies our law under Rule 11. The standard for prejudice this Court applies in reviewing a petition for post-conviction relief does not focus on whether or not defendant would have

entered the plea but for the Rule 11 violation; the focus is on whether or not there is prejudice to the plea itself if defendant entered into it without an explanation of his rights. When the correct standard is applied, and the totality of circumstances is considered, the plea in this case was involuntary. I would reverse, and therefore I respectfully dissent.

¶ 17. This case presents an unfortunate combination of circumstances. Defendant spoke no English at the time the plea was taken. All the critical legal issues, including those mandated by Rule 11, concerning what the plea meant, what rights defendant was giving up, and what defendant understood would be the collateral consequences of the plea (possible deportation), were allegedly explained to him by his attorney, David Nicholson. Defendant's former wife, Roberta Pratt, acted as interpreter between defendant and his attorney, but she was not in court on the day defendant pled guilty.* On that day, a court interpreter was present whom defendant says he could not understand. While the interpreter provided

---

* The trial court's Finding #4 indicates that Roberta Pratt was present at the change of plea hearing, but this finding is clearly erroneous. The transcript of the hearing includes reference to a court-provided Spanish interpreter, and defendant testified during the PCR hearing that Roberta Pratt was not present at the plea hearing. The trial court's finding that Pratt was present is apparently based upon Nicholson's statement that he "believe[d]" Pratt was at the hearing, but Nicholson had no specific recollection that Pratt was present. Whether or not Pratt was there, however, does not change the fact that Pratt had no obligation to explain the rights defendant was about to waive. That obligation belonged to the court, which utterly failed to perform it.

simultaneous translation of the proceeding, defendant did not say a single word. Even if he did understand the interpreter, there is no colloquy in open court with defendant about the voluntariness of his plea. Defendant signed a standard waiver of his rights in English. This is meaningless because defendant neither spoke nor read English.

¶ 18. The attack on the guilty plea came about over an issue of collateral consequences. At the PCR hearing, defendant testified that because of his language problems he did not even understand the word guilty. He asserts that he did what his lawyer told him to do because he was told that he would avoid deportation. Defendant's story is at least consistent with the fact that the state's attorney had reduced the felony charges against defendant to misdemeanors to help defendant avoid deportation. The federal immigration authorities viewed the situation differently and initiated deportation proceedings. The issues at the PCR hearing revolved around the voluntariness of defendant's plea. Defendant claimed he did not understand the plea proceedings. His attorney, Nicholson, claims defendant was fully advised and that he made no guarantees about deportation. The trial court found against defendant on this issue. If this case were just about whether or not defendant's counsel had coerced him into pleading guilty, or had been ineffective in advising him about collateral consequences, I would agree that defendant did not carry his burden at the PCR hearing.

¶ 19. Defendant's second ground for relief, however, was that the plea was involuntary because of the Rule 11(c) and (d) violations, and should be vacated on that ground. Despite the fact that there was no colloquy with defendant, the trial court rejected this claim by finding there was "substantial compliance" with Rule 11. Moreover, it ruled that because defendant had reason to enter the guilty plea anyway (to avoid deportation), he could not have been prejudiced by the Rule 11 violations. The majority agrees with this interpretation of our Rule 11 jurisprudence and holds that defendant must show, in effect, that he would not have entered the plea, absent the Rule 11 violation. I disagree that this is our law.

¶ 20. The question the Rule 11 colloquy answers is whether the plea of guilty is voluntarily and knowingly made by the defendant. *State v. Yates,* 169 Vt. 20, 25, 726 A.2d 483, 486 (1999); *In re Thompson,* 166 Vt. 471, 474, 697 A.2d 1111, 1113 (1997); Reporter's Notes, V.R.Cr.P. 11. A plea is not voluntary if the defendant does not understand the nature of the charges against him, what it means to plead guilty, and what rights he is giving up that inhere in a fair trial. See, e.g., *State v. Louthan,* 595 N.W.2d 917, 921-22 (Neb. 1999) (to establish voluntariness of guilty plea, court must examine defendant to determine that he understands that by pleading guilty he waives his privilege against self-incrimination, right to confront witnesses, and right to a jury trial); *In re Kasper,* 145 Vt. 117, 119, 483 A.2d 608, 609 (1984) (plea cannot be voluntary unless defendant possesses an understanding of the law in relation to the facts). An involuntary plea is a violation of due process. See *Bousley v. United States,* 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent.") (internal quotations omitted); *Brady v. United States,* 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); *McCarthy v. United States,* 394 U.S. 459, 466 (1969) ("[I]f a defendant's guilty plea is not ... voluntary and knowing, it has been obtained in violation of due process and is therefore void."). We adopted *McCarthy* in *State v. Yates,* 169 Vt. at 25, 726 A.2d at 487.

¶ 21. To ensure due process, the standard of review on the voluntariness of a plea cannot be that there were good reasons for the defendant to enter the plea, even if he did not know what rights he was giving up. Rather, the focus must be on the defendant's understanding of those rights, no matter how advantageous the plea agreement may have been, or how much he wanted it. We presume that the plea agreement is made because the defendant wants it, but the defendant has to want it after being advised in open court of the rights he is giving up in exchange. This is the meaning of prejudice to the plea, the standard we referred to in *State v. Boskind*, 174 Vt. 184, 193, 807 A.2d 358, 366 (2002) (holding that in post-conviction relief proceeding "the burden is on defendants to prove that their respective trial courts did not substantially comply with V.R.Cr.P. 11 in accepting their plea agreements and that this noncompliance *prejudiced their pleas.*") (emphasis added). Otherwise, there is no point in engaging in the Rule 11 colloquy to determine voluntariness.

¶ 22. Indeed, our very recent jurisprudence has looked at the voluntariness question in precisely this manner. In *In re J.M.*, 172 Vt. 61, 769 A.2d 656 (2001), the complete lack of a Rule 11 colloquy was raised on direct appeal. We vacated the plea as plain error because the court did not inquire of J.M. whether he understood the charges against him, understood the penalties provided by law, understood he was waiving important constitutional rights, and if his plea was knowing and voluntary. "The brief exchange that took place was between the court and the attorneys, and this exchange was more to ensure that the paperwork was filled out properly than to fulfill the requirements of Rule 11 .... As a result, we must vacate J.M.'s admission." *Id.* at 63, 769 A.2d at 658-59. In other words, despite the fact that J.M. was represented by counsel and some

limited colloquy with counsel took place, we could not satisfy ourselves from the record that there were any indicia of reliability to the plea. Therefore, we could not uphold it. Even more recently, in *In re Quinn*, 174 Vt. 562, 564-65, 816 A.2d 425, 428 (2002) (mem.), a post-conviction relief proceeding where prejudice is required, we invalidated a guilty plea as involuntary despite the defendant's statement in open court that his plea was voluntary, because there was evidence of coercion by his attorney. Other circumstances surrounding the plea failed to provide assurance the plea was voluntary; defendant had been depressed and had recently attempted suicide. In *Quinn*, the prejudice that we considered was prejudice to the voluntariness of the plea. *Id.* at 563, 816 A.2d at 426 (holding that a "court's finding of fundamental error in the acceptance of a guilty plea is sufficient to award [post-conviction] relief"). Even though *Quinn* was a PCR, we did not review the plea from the standpoint of what consequences the defendant avoided by entering the plea.

¶ 23. The situations presented in *J.M.* and *Quinn* are different from the many Rule 11 cases we review presenting mere technical violations that do not go to the heart of voluntariness. For example, we have held where there is partial, but not strict, compliance with Rule 11, and there are other indicia of voluntariness, that the plea is valid. See, e.g., *State v. Morrissette*, 170 Vt. 569, 571, 743 A.2d 1091, 1093 (1999) (mem.) (not looking at the desirability of the plea agreement but finding the following indicia of voluntariness to render defendant's guilty plea valid: lack of evidence that defendant was not competent to understand his situation, defendant's execution of waiver forms, court's inquiry confirming that defendant understood these documents, and defendant's stipulation to factual basis for charge); *Thompson*, 166 Vt. at 476, 697 A.2d at 1114 (Court assured of

substantial compliance with Rule 11(c) by fact that petitioner's dialogue with court during plea hearing "plainly indicated that he had reviewed the forms with his attorneys" and following additional explanations of the forms he had signed, petitioner "expressed satisfaction with the agreements").

¶ 24. Here, the totality of the circumstances does not support a conclusion that the plea was voluntary. See *Quinn*, 174 Vt. at 565, 816 A.2d at 428 (looking at "the totality of the circumstances surrounding petitioner's pleas"). First, contrary to the trial court's holding, this is not merely a technical violation of Rule 11 where we might be able to find substantial compliance by looking at the surrounding circumstances. Like the record in *J.M.*, it is bare. There is not even a partial colloquy to which we might turn to satisfy ourselves that defendant, through the court's interpreter, understood that he was pleading guilty and waiving his rights. Second, we cannot rely on Nicholson, defendant's attorney, who claimed to have advised him of his rights at a time other than the day of the plea through an interpreter. Nicholson does not speak Spanish and the interpreter he used, Roberta Pratt, did not testify at the PCR hearing. Under these circumstances, I do not understand how Nicholson can provide the evidentiary foundation necessary for the trial court to find that defendant understood his rights and that his plea was knowing and voluntary. Moreover, contrary to the findings of the PCR court, Nicholson was concerned that Pratt's Spanish was not all that good. He described it as "halting," and he feared that defendant did not really understand what was going on. Nicholson added that defendant always tried to be very pleasant and accommodating, so "a lot of times he would indicate that he understood things, where I didn't really think he did." Third, we cannot rely on the written waiver, not written in Spanish, for obvious reasons.

In short, there is nothing from the record or the surrounding circumstances that gives us any confidence that defendant knowingly waived his rights. On the contrary, given the language barrier, we have every reason to doubt voluntariness, and therefore, I dissent.

¶ 25. I am authorized to state that Justice Dooley joins in this dissent.