2013 VT 75

### In re Jason Blow

[82 A.3d 554]

No. 12-267

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 30, 2013

*Bradley S. Stetler* of *Stetler, Allen & Kampmann,* Burlington, for Petitioner-Appellant.

*William H. Sorrell,* Attorney General, and *David McLean,* Assistant Attorney General, Montpelier, for Respondent-Appellee.

¶ 1. **Reiber, C.J.** Petitioner, who was sentenced to three to eight years in prison for lewd and lascivious behavior, appeals the trial court's dismissal of his request for post-conviction relief on his claim of an Ex Post Facto Clause violation. During petitioner's incarceration, the Legislature enacted a delayed-release statute extending the minimum terms inmates convicted of certain crimes must serve before becoming eligible for early release, such as parole. Although petitioner successfully challenged in an earlier

suit the application of the statute to him as a violation of the Federal Constitution's prohibition on the retroactive enhancement of punishment, he nevertheless claims that the Department of Corrections' (DOC) now-rectified application of the delayed-release statute constitutes an ongoing violation because it delayed his participation in prerelease rehabilitative programming, effectively denying him a chance for parole upon the completion of his minimum sentence. Petitioner also argues that this delay violated his plea agreement. We conclude that the trial court already remedied the Ex Post Facto Clause violation by restoring petitioner's minimum sentence and that he is serving the sentence for which he bargained. We therefore affirm.

¶ 2. Petitioner pleaded guilty in July 2008 to three counts of lewd and lascivious conduct under 13 V.S.A. § 2601. The plea agreement recited consecutive sentences of one-to-five years, one-to-five years, and one-to-three years for the three charged counts, respectively. In the aggregate, the agreement contemplated a total sentence of three-to-thirteen years, although petitioner remained free to argue for a lower sentence. In January 2009, petitioner was sentenced to an effective sentence of three-to-eight years to serve. Inmates are generally eligible for parole consideration upon the completion of their minimum prison terms, 28 V.S.A. § 501(2), which, for petitioner, the DOC initially calculated to be Feb. 3, 2011.[1] Before the DOC would recommend petitioner for parole, however, it required him to complete the Vermont Treatment Program for Sexual Abusers (VTPSA), a program designed to teach offenders to modify their behavior. According to petitioner's uncontested statement of undisputed facts, his VTPSA participation would take twelve to eighteen months to complete. The DOC generally attempts to time the beginning of the program to permit completion around the time an inmate becomes eligible for parole consideration at the expiration of his or her minimum sentence.[2]

---

[1] On this point, there is some inconsistency in the pleadings. Petitioner's PCR complaint stated his original minimum-sentence date was in February 2012; his response to the State's motion to dismiss, however, referenced a minimum-sentence date of February 2011, which is consistent with the DOC computation sheet.

[2] VTPSA program length and location varies depending on an inmate's classification based, in part, on potential to reoffend. High-intensity programs for the highest-risk offenders last from twenty-four to thirty-six months; the moderate-intensity program lasts from twelve to eighteen months. See DOC Directive 371.12,

¶ 3. In this case, according to petitioner, the DOC would not permit him to participate until he was within twelve to eighteen months of completing his minimum sentence. Based on the DOC's original minimum-release date calculation, the DOC informed petitioner he would be eligible to begin VTPSA in June 2009. Before petitioner began VTPSA, however, the Vermont Legislature enacted 28 V.S.A. § 204b to require that inmates convicted of certain designated sexual crimes and classified as high-risk under Vermont's sex-offender registry statutes serve at least seventy percent of their maximum sentence before becoming eligible for parole. In accordance with 13 V.S.A. § 5411b, the DOC classified petitioner as high risk, which is defined as posing a "high degree of dangerousness . . . to others." See *Wood v. Pallito*, Nos. 947-12-09 Wncv, 963-12-09 Wncv, 964-12-09 Wncv, 102-2-10 Wncv, 121-2-10 Wncv, 2010 WL 4567692 (Vt. Super. Ct. Nov. 3, 2010) (citing statutory definition of high risk from 13 V.S.A. § 5401). On that basis, the DOC determined that the delayed-release statute, which became effective July 1, 2009, applied retroactively to petitioner and adjusted his minimum sentence accordingly. Because of the increase in petitioner's minimum sentence, the DOC determined petitioner was no longer within his twelve-to-eighteen-month prerelease window for VTPSA and delayed his entry into the program.

¶ 4. In February 2010, petitioner and other similarly situated inmates filed a motion for post-conviction relief in superior court, challenging the DOC's use of 28 V.S.A. § 204b to recalculate their minimum sentences as a violation of the Ex Post Facto Clause of the Federal Constitution. The trial court granted summary judgment to the inmates in November 2010, ruling that a violation occurred because the application of 28 V.S.A. § 204b retroactively increased the measure of the inmates' punishment by lengthening their minimum sentences. According to the trial court, the change had the effect of categorically foreclosing eligibility to apply for furlough or parole. After the grant of summary judgment, the DOC restored petitioner's original minimum sentence date of February 2011.

¶ 5. Following the restoration of petitioner's original minimum sentence, petitioner had a parole hearing scheduled for January or

http://www.doc.state.vt.us/about/policies/rpd/numeric_list; see also Dep't of Corr., Vermont Treatment Program for Sexual Abusers, available at http://doc.vermont .gov/programs/vtpsa.

February 2011, approximately coinciding with his restored mini-mum-sentence date. Petitioner waived the parole hearing after, he said, his case worker told him he had no chance of parole because he had not entered sex-offender programming. Petitioner began VTPSA programming in March 2011, about twenty-five months later than he initially anticipated. Petitioner had another parole hearing in early February 2012. The DOC recommended against parole, citing "the offender's lack of adherence to his/her case plan to the satisfaction of the Department." In the parole summary, petitioner's case worker indicated that, among other things, peti-tioner would need to continue to participate in VTPSA and complete the program successfully before being recommended for parole.[3] Petitioner also needed to complete 180 days on conditional release. The board again denied petitioner parole.

¶ 6. In February 2012, petitioner returned to court seeking post-conviction relief. In his complaint, he maintained that the lingering effects of the alleged sex-offender-programming delay constituted an ongoing violation of the Ex Post Facto Clause because his late entry into VTPSA "created a sufficient risk of eliminating petitioner's eligibility for parole in February[ ] 2012." He argued in the alternative that the programming delay effec-tively rendered his plea agreement involuntary because, he claims, he bargained for the ability to apply for furlough or parole at the conclusion of his minimum sentence. Petitioner sought relief in the form of release without the required VTPSA programming, an order instructing the DOC to provide expedited programming, or an order to the parole board requiring them not to consider the petitioner's lack of VTPSA programming when reviewing his request for parole. The State filed a motion to dismiss for failure to state a claim under Vermont Rule of Civil Procedure 12(b)(6). In response, petitioner filed a motion for summary judgment and a memorandum in opposition to the State's motion to dismiss. The trial court granted the State's motion to dismiss, obviating the need to dispose of petitioner's motion for summary judgment.[4]

---

[3] We draw the contents of the parole summary from petitioner's affidavit. The parole summary was not included in the trial court record. Although the language is unclear, we understand the parole summary to refer to the fact that petitioner had not completed the VTPSA programming and not to some unspecified deficiency in the quality of his participation to date.

[4] To the extent that we draw on petitioner's affidavit, filed with the trial court before the court's decision on the State's motion to dismiss, we do so only to

¶ 7. In its decision, the trial court concluded that its earlier order remedied the unconstitutional retroactive application of the delayed-release statute by restoring petitioner's original minimum sentence. No new Ex Post Facto Clause violation occurred when petitioner was later denied parole because there was "no retroactive change to the rules concerning eligibility for sex offender programming." Further, the trial court found the plea voluntary because petitioner was serving exactly the sentence he had bargained for. Petitioner timely appealed the court's dismissal order.

¶ 8. A dismissal for failure to state a claim upon which relief can be granted is appropriate when "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Richards v. Town of Norwich*, 169 Vt. 44, 48, 726 A.2d 81, 85 (1999) (quotation omitted). On appeal, we review de novo the trial court's decision to grant a motion to dismiss. *Nichols v. Hofmann*, 2010 VT 36, ¶ 4, 188 Vt. 1, 998 A.2d 1040. As the trial court must when considering a motion to dismiss, we assume the truth of all factual allegations in the complaint and accept "all reasonable inferences that may be derived from [the] plaintiff's pleadings." *Richards*, 169 Vt. at 48-49, 726 A.2d at 85. Although our review of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings, a court may take judicial notice of certain facts. See *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 10 n.4, 186 Vt. 605, 987 A.2d 258 (mem.); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Courts may take judicial notice of state administrative rules and regulations when the pleadings or other written documents provide parties with sufficient notice. V.R.C.P. 44.1(a).

---

provide the appropriate context to understand petitioner's argument and our decision. The trial court did not expressly convert the State's motion to dismiss into one for summary judgment and thus did not rely on the specific, uncontroverted information contained in petitioner's affidavits. We note, however, that, even if the trial court had, the material in petitioner's motion for summary judgment and accompanying affidavit merely underscores the fact that no factual scenario would entitle petitioner to the relief he sought.

I.

¶ 9. Petitioner first argues that he is suffering an ongoing Ex Post Facto Clause violation because the DOC effectively increased the "standard of punishment" attached to his crime. His argument rests on his inability to complete rehabilitative programming in time to afford a reasonable probability of obtaining release during his scheduled parole board hearings. Petitioner contends that, if not for the DOC's unconstitutional application of the delayed-release statute, he would have entered and completed the required programming before his first hearing in February 2011 and certainly before his second in February 2012. Absent satisfactory completion of the programming, petitioner maintains that he had absolutely no chance to obtain parole. In denying petitioner's most recent request for parole, the board cited his failure to complete the programming as a principal reason. Nevertheless, we discern no ongoing violation of the Ex Post Facto Clause because, properly understood, petitioner quarrels not with the delayed-release statute, which no longer applies, but rather with the DOC's decision not to recommend him for parole and the parole board's determination that he was not a suitable candidate.

¶ 10. ■ Retroactively-applied changes to parole laws may, in certain circumstances, violate the Ex Post Facto Clause. See *Garner v. Jones*, 529 U.S. 244, 249-50 (2000); *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 512-13 (1995) (no Ex Post Facto Clause violation where, among other things, petitioner already unlikely to receive parole and change did not affect initial parole eligibility and hearing but rather the frequency of subsequent hearings). Under the United States Constitution, states are prohibited from passing any "ex post facto Law." U.S. Const. art. I, § 10. A prohibited ex post facto law is one that is, or is applied in a way that is, "both retrospective and more onerous than the law in effect on the date of the offense." *Weaver v. Graham*, 450 U.S. 24, 30-31 (1981). A law is retroactive if it "applies to prisoners convicted for acts committed before the [challenged] provision's effective date." *Id.* at 31. As the United States Supreme Court observed in *Morales*, the prohibition protects prisoners from alterations in the definition of their crimes, increases in the punishments attached to their convictions, or from actions which "stiffen the standard of punishment applicable" to their convictions. 514 U.S. at 504-05 (quotation omitted).

¶ 11. ■ The United States Supreme Court recently revisited the Ex Post Facto Clause in *Garner*, 529 U.S. at 250, in the context of a challenge to a change in parole rules. In *Garner*, the Court stressed that the dispositive consideration is whether "retroactive application of the change in . . . law create[s] a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* (quotation omitted). The Court rejected the contention that a change in the required frequency of parole-reconsideration hearings for Georgia inmates who had been initially denied automatically violated the Ex Post Facto Clause. In rejecting the conclusion that the retroactively-applied rule change constituted a per se Ex Post Facto Clause violation, the Court explicitly noted that the rule was "qualified in two important respects": one, it permitted the state parole board to determine how often to schedule a denied inmate for reconsideration and, two, the board's internal policies allowed for expedited reviews based on changes in circumstances or new information. *Id.* at 254. The clear import of the Court's observation of these key qualifications is that their absence might have led to the opposite conclusion: that the amended rule on its face would necessarily increase the measure of punishment attached to the inmate's conviction. See *id.* ("The essence of [the inmate's] case . . . is not that discretion has been changed in its exercise but that, in the period between parole reviews, it will not be exercised at all. The statutory structure, its implementing regulations, and the Parole Board's unrefuted representations regarding its operations do not lead to this conclusion."). The Court then remanded for a determination, based on "evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, [of whether] its retroactive application will result in a longer period of incarceration than under the earlier rule." *Id.* at 255.

¶ 12. We recently considered a related type of Ex Post Facto Clause challenge to a statute that restricted an inmate's furlough eligibility. *Girouard v. Hofmann*, 2009 VT 66, ¶ 4, 186 Vt. 153, 981 A.2d 419. In *Girouard*, the inmate claimed that by making him ineligible for furlough, a retroactively-applied statute "significantly decreased his likelihood of being paroled" because successfully completing furlough was a prerequisite to obtaining a positive parole recommendation from the DOC. *Id.* Without that recommendation, the inmate asserted, the parole board would not grant parole. *Id.* We reversed the trial court's dismissal of the inmate's

claim, noting that "[i]f in fact the [challenged statute] created a sufficient risk of eliminating [the] plaintiff's eligibility for parole, then [the] plaintiff's claim of an Ex Post Facto Clause violation may prevail." *Id.* ¶ 11; accord *Puckett v. Abels*, 684 So. 2d 671, 678 (Miss. 1996) (retroactive law requiring inmates to serve eighty-five percent of their sentences before parole eligibility unconstitutionally stiffened punishment by rendering them categorically ineligible for parole).

¶ 13. Relying on *Girouard* and United States Supreme Court precedent, the trial court in petitioner's original case concluded that the recalculation of petitioner's minimum sentence conclusively foreclosed any possibility of parole by rendering him totally ineligible for review by the parole board. *Wood*, 2010 WL 4567692. By categorically precluding parole review, the trial court ruled that the DOC's application of the statute violated the Ex Post Facto Clause's prohibition on retroactive increases in the measure of punishment attached to a particular crime. *Id.*

¶ 14. To be clear, the question we face here is not the soundness of the trial court's unappealed ruling in petitioner's original case that the statute's application violated the Ex Post Facto Clause. The statute's application to petitioner at that time may have impermissibly stiffened his punishment by retroactively increasing his minimum sentence, but that is no longer the case. Pursuant to the trial court's decision, the DOC restored petitioner's minimum sentence. Thus, the challenge petitioner brings in this more recent suit is not to the claimed unconstitutional retroactive application of a statute, but rather to the DOC's decision not to recommend him for parole based on its longstanding policy of requiring certain inmates to complete VTPSA and the parole board's wholly discretionary determination — in accordance with its longstanding statutory mandates — that petitioner was an unsuitable candidate.

¶ 15. Having had his minimum sentence restored, petitioner has been eligible for parole consideration since February 2011. See 28 V.S.A. § 501(2) ("If the inmate's sentence has a minimum term, the inmate shall be eligible for parole consideration after the inmate has served the minimum term of the sentence."). Petitioner's original minimum sentence was restored many months before his date of eligibility for his first parole review. Petitioner, in fact, waived his first hearing in February 2011. He later had an annual review in 2012 but was denied parole because, among other things, he had not completed programming.

¶ 16. We acknowledge petitioner's frustration with the interaction between the now-remedied improper application of the delayed-release statute and the DOC's longstanding internal requirements with respect to rehabilitative prerelease programming for sexual offenders.[5] Had the DOC never applied § 204b, petitioner might possibly have entered programming earlier. Had petitioner completed the programming, he might then have been able to present a more compelling case to the parole board during his first and second hearings in February 2011 and February 2012.[6] Indeed, on review of a motion to dismiss, we must accept as accurate his contention that each of these eventualities may have come to pass.

¶ 17. ▓ ▓ Nevertheless, petitioner's inability to complete VTPSA by the expiration of his minimum sentence is not, in and of itself, an Ex Post Facto Clause violation. It is at most a collateral consequence of a constellation of factors, including but not limited to: in the first instance, the offense committed; the delayed-release statute's now-remedied application; program availability; and petitioner's timing in filing the initial suit that resulted in the restoration of his minimum sentence.[7] We agree with the trial court that the remedy for an Ex Post Facto Clause violation does not require that all "collateral consequences of the violation be rooted out and changed by the court." This is especially true where the causal connection between the now-inapplicable delayed-release statute and the parole board's denial — after a hearing and considering all facts — presumes petitioner could have begun the VTPSA programming, would have successfully completed the programming, and would have been found by the

---

[5] Given the posture of this case, we assume the accuracy of petitioner's allegation that the rehabilitative programming is an absolute prerequisite for the DOC's parole recommendation and for the parole board's granting of release.

[6] Petitioner did not file his initial challenge to the delayed-release statute's application until February 2010 despite his assertion that he would have been eligible for programming in June 2009 without the effect of the statute. The pleadings do not disclose precisely when the DOC informed petitioner that it intended to apply the delayed-release statute, but petitioner certainly would have become aware when he did not, in fact, start programming when he was purportedly scheduled to in June 2009.

[7] We cannot know whether petitioner would actually have successfully completed VTPSA in time for release. A host of factors, including logistical considerations, make it difficult, if not impossible, to accurately predict when an inmate will enter or complete programming.

parole board to be eligible for parole on the basis of the record as a whole.

¶ 18. As we have observed, the trial court remedied the alleged Ex Post Facto Clause violation created by the application of the delayed-release statute's application when it ordered petitioner's original minimum sentence restored. Thus, we are left to consider only the DOC's decision not to recommend petitioner for parole and the parole board's subsequent denial of petitioner's application. The DOC's programming requirements themselves cannot form the basis of petitioner's constitutional challenge because they are not retroactive. The DOC's prerelease programming requirement predated petitioner's conviction and the retroactive application of the delayed-release statute. Petitioner specifically alleged that he was told he would be eligible to begin VTPSA in June 2009 before the unconstitutional retroactive application of the delayed-release statute to his minimum sentence.

¶ 19. It therefore follows that the requirement that petitioner complete the programming preceded the statute's application. Indeed, the current DOC directive governing program participation requirements for offenders convicted of so-called listed offenses dates to December 2002, well in advance of petitioner's conviction. See DOC Directive 371.12 (noting effective date of Dec. 30, 2002, and superseding a rule dated March 1, 2002). In 2004, several years before petitioner's conviction, the DOC adopted general guidelines for the timing of parole recommendations. See DOC Directive 371.25, ¶ 4.5 ("[T]he decision to recommend or not recommend will be on an individual basis, after review of all of the facts in the case."). For all but the most minor offenses, the guidelines suggest that the DOC not make a positive parole recommendation until an inmate has completed successfully 90 to 180 days on conditional reentry in the community, depending on the crime. *Id.* App. I; see 28 V.S.A. § 723 (providing for release on conditional reentry when inmate reaches minimum sentence date). As part of the DOC's assessment of an inmate's suitability for reintegration furlough or conditional reentry, it must not only be "satisfied that the offender is demonstrating progress in his or her reentry programs" but also that "the offender does not present an unreasonable risk to his or her victims or to the community at large." 28 V.S.A. § 721. In petitioner's case, the DOC evidently determined, in its discretion, that petitioner's completion of the VTPSA program needed to precede a conditional-reentry placement or a parole recommendation.

¶ 20. Nor does the parole board's decision to deny parole in this case constitute an independent Ex Post Facto Clause violation, because petitioner's pleadings do not suggest that the nature of the parole board's inquiry has changed in any way since he committed the crimes for which he was convicted. See *Weaver*, 450 U.S. at 31 (Ex Post Facto Clause inquiry asks whether law is retroactive). Taking as true petitioner's allegation that the completion of VTPSA is a prerequisite for both furlough and parole, there is no indication that this policy has changed in any way since petitioner committed his crime. By statute, the parole board considers a host of factors, the recommendation of the DOC being only one of them. See 28 V.S.A. § 502(a) ("The board shall consider all pertinent information regarding an inmate in order to determine the inmate's eligibility for parole."). Before releasing an inmate on parole, the board must determine, among other things, that "there is a reasonable probability that the inmate can be released without detriment to the community or to the inmate; and [ ] the inmate is willing and capable of fulfilling the obligations of a law-abiding citizen." *Id.* § 502a(b)(2)-(3). The parole board's determination is subject to the mandate that parole "shall be ordered only for the best interest of the community and of the inmate, and shall not be regarded as an award of clemency, a reduction of sentence or a conditional pardon." *Id.* § 502a(c). To the extent that the board in this case concluded that petitioner was ill-suited for release because he had not completed pre-release programming — whatever the reason — the board's actions did not vary from its longstanding mandate to grant parole to inmates only when it will not endanger the community.

¶ 21. We note also that the program at issue is purely rehabilitative, not punitive. Its goal is to prepare former offenders for safe reintegration into society. Put simply, petitioner is not eligible for release because he is an untreated sex offender, not because a retroactively applied statute continues to bar his release. In light of these considerations, no additional facts or circumstances would entitle petitioner to the relief he now seeks, and the superior court therefore properly dismissed his complaint to the extent that it alleged an ongoing violation of the Ex Post Facto Clause.

## II.

¶ 22. We next address petitioner's argument that the temporary application of the delayed-release statute rendered his plea agree-

ment involuntary. Petitioner asserts that he agreed to a plea that would give him a real possibility of receiving parole when his minimum sentence expired. Because of the erroneous but temporary change in petitioner's minimum sentence, petitioner's participation in VTPSA was delayed. The delay in completing the mandatory rehabilitative programming consequently meant that petitioner had no real chance for parole at the expiration of his minimum sentence. Without the real possibility of parole, petitioner argues, his plea was involuntary because he entered into it with the understanding that he would be eligible for parole consideration at the end of his three-year minimum sentence.

¶ 23. ▮▮▮ At the outset, we observe that parties to a plea agreement are "bound by the express terms of [the] agreement." *In re Meunier*, 145 Vt. 414, 420, 491 A.2d 1019, 1024 (1985). Here, we discern no express promise of parole in the plea agreement. Nothing on the face of the agreement explicitly promised petitioner release immediately upon the completion of his third year, or indeed at any other time up to the maximum sentence. Indeed, the trial court could not impose upon the DOC an obligation to recommend petitioner for parole, nor could the court mandate that the board grant it, because these functions are by law wholly within the discretion of the respective agencies. See 28 V.S.A. § 454; see also *Parker v. Gorczyk*, 170 Vt. 263, 268-69, 744 A.2d 410, 413-14 (1999) (outlining the parameters of DOC discretion when awarding furlough, a distinct but related concept).

¶ 24. ▮ Even in the absence of an express promise, "misinformation regarding parole eligibility may provide a basis for a successful attack on the voluntariness of a plea." *In re Moulton*, 158 Vt. 580, 584, 613 A.2d 705, 708 (1992). Petitioner bears the heavy burden of establishing, however, that he agreed to the plea (1) "while reasonably relying on a material misunderstanding regarding his parole eligibility" and (2) that the "misunderstanding worked to his prejudice." *Id.* Under the facts alleged in petitioner's complaint, petitioner cannot meet this burden.

¶ 25. ▮ On this point, we conclude that our recent decision in *In re Shaimas*, 2008 VT 82, 184 Vt. 580, 958 A.2d 646 (mem.), is logically, if not factually, resonant with this case, and therefore controls. In *Shaimas*, an inmate serving a sentence of fifteen to twenty-five years sought post-conviction relief, alleging that a change in the DOC's offender-classification system prevented him

from completing a treatment program before the expiration of his minimum sentence. *Id.* ¶¶ 4-5. As in petitioner's case, the *Shaimas* petitioner contended that he had no real possibility of parole or conditional reentry when his minimum sentence expired. *Id.* ¶ 5. The petitioner alleged that when he entered his plea he did so "with the knowledge and understanding that he would be eligible for programming in advance of his minimum and that he would have a chance for parole and/or conditional reentry when he reached the minimum of his sentence." *Id.* (quotation omitted). Surveying the state of the relevant law in other jurisdictions, we concluded that "a plea based on parole laws in effect at the time is not rendered involuntary by a change in those laws." *Id.* ¶ 10.

¶ 26. Other than the admittedly accurate observation that the challenge in *Shaimas* was to a DOC classification regime and the one here is premised on the effect of a retroactively applied statute, petitioner offers no real explanation for why this factual distinction ought to lead to a different outcome with respect to the voluntariness of the plea. As we acknowledged in *Shaimas*, "information concerning parole eligibility is inherently imprecise owing to any number of variables such as the petitioner's conduct while in prison, changes in the makeup or philosophy of parole boards, and changes in the law." *Id.* ¶ 9 (quotations omitted). If anything, petitioner's complaint states a decidedly weaker case. In *Shaimas*, the petitioner maintained that he was, in fact, laboring under a misapprehension of the relevant parole statutes because he had been told by his lawyer that treatment programs would be available before his minimum sentence elapsed. See *id.* ¶ 6 (trial counsel averred that, "based on his discussions with the probation officer and the prosecutor, 'it appeared there was a meeting of the minds that . . . sex offender treatment was to be available prior to [petitioner's] minimum release date'" (alteration in original)). Here, petitioner makes no allegation that he was actively misinformed. On the basis of petitioner's pleadings, we can discern no material misunderstanding. Given the inherently imprecise nature of any prediction related to the availability of spaces in a treatment program at a future time, it would have been unreasonable, in any event, for petitioner to have relied on this allegedly material misunderstanding.

¶ 27. ■■■ Moreover, petitioner is serving precisely the sentence for which he bargained. It is for that reason that we also reject his alternative contention, one that was advanced on appeal but

not preserved in *Shaimas*: Even if the plea agreement was not involuntary, he was nevertheless entitled to specific performance. Specific performance is one remedy available when the State violates a ·plea agreement. See *Santobello v. New York*, 404 U.S. 257, 263 (1971); *State v. Coleman*, 160 Vt. 638, 640, 632 A.2d 21, 22 (1993) (mem.). Here, the State has not violated the agreement. Petitioner apparently understood that he would be eligible for parole consideration upon the completion of his minimum sentence, which was three years. The original minimum-sentence date was February 2011. The trial court remedied the improper application of the delayed-release statute by restoring the February 2011 minimum-sentence date before that time. Petitioner waived his hearing before the parole board on that date and was not granted parole. He was denied parole again a year later. Petitioner may have expected to enter programming during the second year of his sentence, but he was never guaranteed or assured that a spot in programming would be available at that time or that he would have been placed in it.

¶ 28. Because petitioner's own pleadings directly contradict the notion that he reasonably relied on any material misunderstanding that prejudiced him when agreeing to the plea, and he is, in fact, serving a sentence that falls within the range for which he bargained, he has not stated a claim for which he would be entitled to rescind his plea as involuntary. Nor is he entitled to immediate release under the guise of specific performance. Specific performance of the plea agreement entitles him to seek parole review upon the expiration of his minimum sentence, which he has done. The trial court properly dismissed petitioner's complaint.

*Affirmed.*