*Carter v. Menard*, No. 718-11-15 Wncv (Tomasi, J., April 13, 2016).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Washington Unit | Docket No. 718-11-15 Wncv |

Bernard Carter,
  Plaintiff,

  v.

Lisa Menard, Commissioner of the
Vermont Department of Corrections,
  Defendant.

### Opinion and Order on the State's Motion to Dismiss

Inmate Bernard Carter alleges that, together, the application to him of 13 V.S.A. § 5301(7), 28 V.S.A. § 725, and the Vermont Department of Corrections' (DOC's) Level C inmate classification directives has retroactively increased the punishment for his offenses in violation of the Ex Post Facto Clause of the United States Constitution, U.S. Const. art. I, § 10, by substantially prolonging his effective ineligibility for parole. He seeks an injunction requiring the DOC to schedule his programming in the manner it presumably would have prior to the adoption of these statutes and directives. The State seeks dismissal, arguing that Mr. Carter has failed to exhaust his administrative remedies and, in any event, has failed to state a claim, Vt. R. Civ. P. 12(b)(6).

1.    Exhaustion

Prior to filing this case, Mr. Carter filed a previous case in this Court raising due process and attempting to raise Ex Post Facto issues related to his Level C

classification. *Carter v. Pallito*, No. 177-3-14 Wncv (Vt. Super. Ct.). While he had initiated an administrative grievance, he had not pursued it to completion. The Court dismissed for failure to exhaust administrative remedies. *Id.*, 2015 WL 5176807 (Jan. 5. 2015). Mr. Carter then neither appealed nor sought to exhaust his administrative remedies. Instead, he filed this case, which is limited to his ex post facto claim.

Mr. Carter evidently was classified as Level C sometime in 2013. He did not grieve his original Level C classification in a timely manner. As a result, the State argues that this case can only fall under 42 U.S.C. § 1983; that such a claim also must be grieved in a timely fashion or be forever barred; Mr. Carter failed to do so; and this case must be dismissed. In response, Mr. Carter argues that, in this case he seeks post-conviction review (PCR), 13 V.S.A. § 7131, or review in the nature of habeas corpus, and thus the exhaustion doctrine does not apply. The State responds that this cannot be a PCR because PCRs are limited to attacks on sentences as imposed and Mr. Carter is not challenging his sentence. The State also argues that this cannot be a habeas corpus action because Mr. Carter is not seeking *immediate* release from custody.

It is not fully apparent whether Vermont's PCR statute is coextensive in substance with a habeas corpus action or differs in some regards. Originally, the PCR statute was adopted to simplify traditional habeas procedures and distribute

cases throughout the court system differently than under habeas.[1] *In re Stewart*, 140 Vt. 351, 356 (1981). PCR specifically applies, however, only where a plaintiff under sentence:

> claims the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or of the state of Vermont, or that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

13 V.S.A. § 7131. As the State asserts, PCR actions rightly challenge the propriety and legality of a defendant's original criminal conviction or sentence. In this case, Plaintiff is making no claim that falls beneath that statutory grant of jurisdiction. As a result, the Court does not believe Section 7131 provides a vehicle for his suit.

To the extent habeas corpus provides a broader remedy than the PCR statute,[2] Plaintiff also fails to set out a claim for habeas corpus relief. The core of a habeas proceeding is an asserted right to immediate or, to some extent, speedier release from custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (explaining that claims for immediate *or speedier* release should be brought under the habeas statute rather than under 42 U.S.C. § 1983). There is no such claim in this case.

---

[1] PCR cases are required to be filed in the county of conviction. 13 V.S.A. § 7131. Habeas cases are required to be filed in the county of imprisonment. 12 V.S.A. § 3953. Since the State failed to assert improper venue as a basis for dismissal in its original motion, the Court declines to consider the issue. Vt. R. Civ. P. 12(h).

[2] One Vermont case has noted that PCR is the "substantial equivalent of conventional habeas corpus." *Shequin v. Smith*, 129 Vt. 578, 582 (1971). If so, the Court's discussion of the habeas remedy would apply with equal force to Plaintiff's PCR claim.

Mr. Carter's claim is that his *eligibility*, or suitability, for parole has been diminished. There is no allegation or inference that, if he were to succeed with his ex post facto claim, that he would become entitled to a favorable parole decision. The United States Supreme Court has made it plain that actual entitlement to a speedier or an immediate release is the *sine qua non* of a habeas case. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (challenges to parole eligibility and suitability not properly characterized as habeas corpus actions because success does not "necessarily demonstrate the invalidity of confinement or its duration"); *Williams v. Ward*, 556 F.2d 1143, 1150 (2d Cir. 1977) (challenge to parole procedure provides no basis for habeas corpus action because, though "relief sought by petitioner may improve his chances for parole, the question of his release and of the length of his confinement still lies within the sound discretion of the board"). Accordingly, this case is more properly characterized as falling under 42 U.S.C. § 1983, rather than habeas corpus or PCR.

The State correctly argues that Mr. Carter was obliged to exhaust his Section 1983 claim under the common law of Vermont and the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).[3] *Luck Bros. v. Agency of Transp.*, 2014 VT 59, ¶¶ 19–

---

[3] Mr. Carter's supposition that there is no exhaustion requirement for habeas corpus claims is wrong, though the consequence of the failure to exhaust an available remedy (a so-called procedural default) in that setting would depend on the "deliberate bypass" rule and would not necessarily lead to dismissal. *See Shuttle v. Patrissi*, 158 Vt. 127, 131 (1992) (adopting the deliberate bypass rule of *Fay v. Noia*, 372 U.S. 391 (1963)); *see also* 13 V.S.A. § 7136 (if PCR applicable, it should be pursued before a habeas corpus action); *Shequin v. Smith*, 129 Vt. 578, 583 (1971) (same).

20, 196 Vt. 584, 594 (describing common law exhaustion requirement); *Johnson v. Louisiana*, 468 F.3d 278, 280 (5th Cir. 2006); *Kellogg v. Neb. Dep't of Corr. Servs.*, 690 N.W.2d 574, 579 (Neb. 2005); *Baker v. Rolnick*, 110 P.3d 1284, 1288 (Ariz. Ct. App. 2005); *Richardson v. Comm'r of Corr.*, 863 A.2d 754, 756 & n.1 (Conn. App. Ct. 2005); *Toney v. Briley*, 813 N.E.2d 758, 760 (Ill. Ct. App. 2004) (all holding that PLRA exhaustion requirement applies in state court).

Mr. Carter failed to exhaust administrative remedies prior to filing this case. While he continues to maintain that exhaustion is unnecessary, in response to the State's motion, he also initiated a new process that fully grieved the State's November 2015 decision to keep him at his Level C designation. *See* Exhibit A to Plaintiff's Opposition to Motion to Dismiss. The State nevertheless argues that, having missed his opportunity to grieve his 2013 Level C designation, Mr. Carter is forever barred from challenging it administratively and in this Court.

The Court is not fully persuaded that the exhaustion doctrine properly applies with the breadth urged by the State. Mr. Carter's claim is not predicated on an isolated event, a single Level C decision. Rather, he seeks prospective relief from an alleged continuing violation of his constitutional rights: the perceived effect of his Level C classification, and related DOC decisions, on his ultimate ability to be paroled. The DOC's grievance policy generally requires the inmate to initiate an informal complaint prior to filing a formal complaint. The timing of the initial complaint, which determines the timing of the subsequent steps, is contingent on when the inmate discovered the "cause of the complaint." Directive 320.01 ¶ 7.a.i.

5

The State does not specify when it believes Mr. Carter should have discovered the complex legal claim he advances in this case, and it is not clear how this provision applies in the circumstance of an ongoing violation of a constitutional right that is necessarily predicated on the DOC's ongoing decision-making.

The Court need not resolve those issues, however. Mr. Carter's recent grievance followed the State's determination to continue his Level C designation and likely should be seen as a new and separately grievable determination. Even if Mr. Carter's recent grievance was procedurally flawed because it was out of time, the DOC appears to have accepted it and addressed it on the merits. Under the PLRA, this is sufficient to demonstrate proper exhaustion. *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("all circuits that have addressed [this issue] have concluded that the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits").

Mr. Carter should have exhausted his administrative remedies prior to filing the first suit. He again should have done so before filing this suit. The State correctly argues that dismissal of this pending action normally would follow from that failure, even though he has recently exhausted his administrative remedies regarding the November 2015 decision.

In this unique instance, however, important constitutional rights are at issue, Plaintiff has already exhausted his remedies with regard to the November 2015 determination, and the Court sees little to be gained from a dismissal and the initiation of a new lawsuit. The issue of the November 2015 decision and grievance

6

has been injected into this matter through the filings made by Plaintiff. The Court views those filings as an implicit request to amend the complaint to add that claim to this action. The Court approves such an amendment, and an amended complaint shall be served on the State within 30 days.

2. Failure to State a Claim[4]

The thrust of Mr. Carter's ex post facto claim is that legislative changes and his classification as Level C prevent him from engaging in programming, which prevents him from participating in furlough, which, in turn, effectively nullifies his opportunity for parole until far later than would have been the case before those statutes existed and the Level C policies were adopted. The State argues that this claim cannot succeed because its Level C directives are not "laws," and the denial of parole at the sentence minimum is not "punishment" for ex post facto purposes.

The Vermont Supreme Court has described the familiar standard for motions to dismiss for failure to state a claim as follows:

> "A motion to dismiss . . . is not favored and rarely granted." This is especially true "when the asserted theory of liability is novel or extreme," as such cases "should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." In reviewing a motion to dismiss, we consider whether, taking all of the nonmoving party's factual allegations as true, "'it appears beyond doubt' that there exist no facts or circumstances that would entitle the plaintiff to relief." We treat all reasonable inferences from the complaint as true, and we assume that the movant's contravening assertions are false.

---

[4] The Court chooses to address the arguments set forth by the State as those contentions would apply with equal force to the extent the complaint is amended to challenge the November 2015 determination.

*Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 316–17 (citations omitted).

As he explains it, Mr. Carter's claim is similar in form, at least at one level of abstraction, to the ex post facto issues addressed by the Vermont Supreme Court in *Girouard v. Hofmann*, 2009 VT 66, 186 Vt. 153 (relying on *Knox v. Lanham*, 895 F. Supp. 750 (D. Md. 1995), *aff'd*, *Worsham v. Lanham*, 76 F.3d 377 (4th Cir. 1996)), and in this Court's recent decision in *Chandler v. Pallito*, No. 210-4-13 Wncv, 2015 WL 10551407 (Vt. Super. Ct. Dec. 24, 2015).

*Girouard* generated a remand to the trial court for factual development. On remand, the trial court found an Ex Post Facto Clause violation based on its understanding of *Girouard* and related authority.[5] *Girouard v. Hoffman*, No. 236-9-07 Ancv (Vt. Super. Ct. Dec. 18, 2009). The State did not appeal. *Chandler* progressed to summary judgment, and the Court ruled for the State, based in part on its understanding of the Supreme Court's *Girouard* decision and related authority. *Chandler* is now on appeal.

As *Chandler* reflects, the issues in this branch of ex post facto cases are complicated and nuanced. In *Chandler*, the Court was able to make a

---

[5] In so ruling on remand, the *Girouard* trial court expressly recognized that the facts of *Girouard*, once developed, were distinguishable from those of *Knox* (and presumably from the reasons the Vermont Supreme Court had cited to *Knox*). *Girouard v. Hoffman*, No. 236-9-07 Ancv, Decision and Order at 5 (Vt. Super. Ct. Dec. 18, 2009). It nevertheless found an ex post facto violation on a different rationale without considering whether any "legislative act" was at issue in the case.

determination that the State policies at issue did not rise to the level of being "laws." Here, different policies and directives are in play, and Mr. Carter also has attempted to link his ex post facto claim to two acts passed by the Legislature. While this case, ultimately, may present similar directives and legal issues to those resolved in *Chandler*, the Court cannot rightly make that determination based on the limited record available to it on a motion to dismiss. Mr. Carter is entitled to develop the record as to the legal force of the Level C directives, the links between the Level C designation and statutory law, and the actual impact of his classification vis-à-vis parole eligibility.

The Court also is not persuaded by the State's argument that there can be no increase in punishment for ex post facto purposes here because a denial of parole at a person's minimum release date can never be considered an increase in punishment. The argument mischaracterizes Mr. Carter's claim, which is that legislative changes and Level C directives have effectively converted his parole-eligible sentence into one in which he essentially is ineligible for parole for a long time beyond his minimum. Under limited circumstances, a diminished ability to receive parole could be sufficient to demonstrate an ex post facto violation. That was precisely the alleged increase in punishment that was at issue in *Girouard* and *Knox*. *See also In re Blow*, 2013 VT 75, ¶¶ 10–11, 194 Vt. 416, 422–23 (2013).

## ORDER

For the foregoing reasons, the State's motion to dismiss is denied. Plaintiff shall submit an amended complaint concerning the November 2015 determination

9

within 30 days.

Dated this __ day of April 2016 at Montpelier, Vermont.

_____
Timothy B. Tomasi,
Superior Court Judge