NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 9

No. 2019-129

| In re Reco Jones | Supreme Court |
|---|---|
| | On Appeal from<br>Superior Court, Washington Unit,<br>Civil Division |
| | December Term, 2019 |

Mary Miles Teachout, J.

Allison N. Fulcher of Martin & Delaney Law Group, Barre, for Petitioner-Appellant.

Rory T. Thibault, Washington County State's Attorney, Barre, for Respondent-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Wesley, Supr. J. (Ret.), Specially Assigned

¶ 1. **ROBINSON, J.** Petitioner appeals the civil division's denial of his post-conviction relief (PCR) petition alleging that he received ineffective assistance of counsel and that his guilty plea was involuntary. Due to his immigration status, federal deportation policies, and Department of Corrections (DOC) policies, the sentence petitioner agreed to—nominally twelve years to life—likely amounted to a life sentence without the possibility of parole with only a minimal chance of deportation. We conclude that the voluntariness of his plea was compromised by misinformation given to him. We reverse, vacate petitioner's conviction, and remand to the civil division with instructions to refer the case to the criminal division for further proceedings.

¶ 2.     In his PCR petition, petitioner alleged that he entered his guilty plea involuntarily, "in reliance upon materially inaccurate advice of counsel." After an evidentiary hearing, the PCR court made the following findings. Petitioner is a citizen of Barbados who came to the United States in 1976 when he was sixteen years old. In June 2012, he was arrested based on allegations that he had sexually assaulted his underage stepdaughter. He confessed on tape and in writing to the allegations. The State charged him with repeated aggravated sexual assault of a child, which carried a sentence of twenty-five years to mandatory life.

¶ 3.     Initially, the State represented to defense counsel and the court that if petitioner pled guilty, federal Immigration and Customs Enforcement (ICE), part of the Department of Homeland Security (DHS), would take petitioner into custody immediately upon his entering a guilty plea, without waiting for sentencing. Faced with this charge, petitioner's initial goal was to be deported to Barbados. Accordingly, he indicated that he would plead guilty, though he later changed his mind because he wanted to stay in Vermont and go to trial. Counsel urged him to accept a plea deal. She reasoned that if they arrived at the plea change and ICE was not present to pick up petitioner, he would not have to plead that day and could keep his options open.

¶ 4.     In the meantime, defense counsel made further inquiries to try to ensure that ICE would, in fact, remove petitioner. She first obtained from the State a declaration from a U.S. Citizenship and Immigration Services attorney that suggested that petitioner would be deportable but did not discuss the timing of deportation. Later that year, while in the state's attorney's office, she spoke to two DHS attorneys on the phone; the state's attorney made the call. It is not clear who the DHS attorneys were or whether they had any authority to negotiate any terms specific to petitioner's case. They stated that ICE would not take petitioner into custody immediately after a change-of-plea hearing but would wait until after sentencing and after petitioner's thirty-day window for appeal had expired. Defense counsel also consulted a reference manual that had been created by an attorney in the Defender General's Office; it indicated that, given the charge,

2

petitioner would have no defense to removal if he pled guilty, but did not clarify the timeline for removal. She never consulted with an immigration defense attorney or any other expert in the field.

¶ 5. Notwithstanding this uncertainty, petitioner eventually decided to pursue a plea agreement. After some negotiations, the parties agreed that petitioner would plead guilty to sexual assault, parental role. This offense carried a penalty range of three years to discretionary life, but the State insisted on a minimum sentence of twelve years. In response to defense counsel's attempts to negotiate a lower minimum sentence, the state's attorney said, "It doesn't matter what the sentence is since ICE is going to pick him up and deport him right away anyway." Counsel discussed the bargain with petitioner, informing him that if he pled guilty, he would spend at least some time as a Vermont inmate and that it was not certain when he would be taken into ICE custody, if at all.[1] Petitioner accepted the plea agreement and pled guilty to sexual assault, parental role. At the PCR hearing, petitioner testified that when he entered the guilty plea, while it was not a certainty what ICE would do, he understood that it was 99.9% likely that he would be taken into federal custody for deportation some time after the appeal period expired. The court deferred sentencing and ordered a presentence investigation (PSI).

¶ 6. At sentencing, all parties understood that there was no certainty about what immigration authorities would do. The state's attorney noted that if petitioner was deported without treatment he would be at "high risk to reoffend," but said, "the immigration piece is out of our hands." Defense counsel stated, "He does understand that what happens from here on out might be the sentence that was agreed to, but most likely is in fact that at some point—at some point in the future—he doesn't know when—he will be in fact deported. We don't know what will happen. He does know that, and is just waiting to see."

---

[1] As noted below, this finding is challenged on appeal. See infra, ¶¶ 16-17.

¶ 7. The sentencing court accepted the parties' agreement and sentenced petitioner to twelve years to life. The court noted that immigration consequences were beyond the court's control, but expressed an intention that petitioner serve the full sentence imposed and complete sex-offender treatment prior to his release. Once petitioner was sentenced, ICE did not take him into custody. The PCR court found that he had been incarcerated for approximately six and a half years at the time of his PCR hearing.

¶ 8. The PCR court found that, among other things, because she failed to seek advice from an immigration defense attorney or defense counsel experienced with immigration matters, petitioner's defense counsel "had a misunderstanding of the impact of a sentence for twelve years to life." Based on expert testimony in the PCR hearing, the PCR court found that the imposed sentence "effectively resulted in a life sentence with no chance of rehabilitation or release and a minimal chance of deportation." The court explained how DOC and federal immigration policies combined to create this result:

> [T]he consequence of a 12-year to life sentence for the sexual assault charge made it virtually certain that [petitioner] would never be removed by Homeland Security and never be eligible for programming that would make release possible. This is because of the effect of the interrelationship between longstanding DOC policy and Homeland Security policy. DOC's longstanding policy was that it would not provide rehabilitation programming to a person subject to deportation because such a person would not be returning to the community in Vermont. The Parole Board would not release a non-programmed person on parole. Thus, because of the possibility of deportation, it was virtually certain that he would serve a life sentence without the possibility of rehabilitation, release, or parole. Then, because he was serving a life sentence, Homeland Security would have no reason to deport him.

¶ 9. With regard to petitioner's ineffective-assistance-of-counsel claim, the PCR court concluded that petitioner's defense counsel's work fell below the standard of competent practice insofar as she had failed to appreciate that DOC and Homeland Security policies together made it extremely likely that defendant would never be eligible for release and would never be removed

4

by Homeland Security.  But the PCR court concluded that this failure had not prejudiced petitioner. It found that counsel had advised petitioner, and petitioner understood, that it was "not a certainty that . . . he would be taken into custody by ICE or when."  The court wrote that it "[could not] conclude that he was prejudiced, since the advice he received from [counsel] was accurate as to the risk that he might not be deported and would wind up serving a 12-year-to-life sentence." Additionally, it found that there could not have been any prejudice to petitioner since there was no evidence that, given better legal advice, he would have chosen to take his chances at trial, and because "[t]here was no evidence that the prosecutor could have been persuaded to agree to any more favorable plea agreement or that the court would have accepted it."

¶ 10.    The PCR court did not directly address petitioner's voluntariness claim; however, its findings as to the prejudice prong of the ineffective-assistance claim imply a conclusion that petitioner's plea was not involuntary since he had been advised of the risk that he would serve his full sentence and was not prejudiced by any misinformation.

¶ 11.    While the PCR court did not vacate petitioner's plea, it did remand the case for "a continuation of the sentencing hearing."  It reasoned:

> the judge acted on the assumption that after twelve years, treatment would be <u>available</u> to [petitioner]. . . . It is apparent that the judge was not aware that if petitioner was not deported and was still in DOC custody after twelve years, DOC would <u>not</u> make treatment programs available to him because of his continuing eligibility for deportation.

The information about DOC's policy was "critical," and would have been available to the sentencing judge had defense counsel met the requisite standard of practice.  Therefore, the PCR court found that sentencing—but not the plea and conviction—had been "tainted by fundamental error."  It made clear that its intent was not to vacate the sentence or rule that the sentence should not have been approved, but merely to allow the sentencing court to consider the new information.

5

¶ 12. On appeal, petitioner argues that the PCR court erred in failing to vacate his guilty plea because defense counsel's ineffective representation rendered his plea involuntary. He also argues that the court's remedy of remanding without vacating his sentence is legally invalid. The State does not respond to petitioner's first argument, but argues that the PCR court's remedy was valid because it "impliedly vacated judgment by remanding the case." In re Bowers, 130 Vt. 314, 316, 292 A.2d 813, 814 (1972) (quotation omitted). We agree with petitioner that his guilty plea was not knowing and voluntary and must be vacated.[2]

¶ 13. We will uphold the PCR court's findings absent a showing of clear error, and its conclusions if reasonably supported by those findings. In re Kimmick, 2013 VT 43, ¶ 16, 194 Vt. 53, 72 A.2d 337 (reviewing PCR petition on ineffective-assistance grounds); see also In re Moulton, 158 Vt. 580, 585, 613 A.2d 705, 708 (1992) (applying clear-error standard to PCR petition on voluntariness grounds).

¶ 14. Two aspects of petitioner's misunderstanding as to the effect of his guilty plea come into play in this appeal: first, his understanding as to the likelihood that he would be deported some time after his sentencing; and second, his understanding of his effective incarcerative sentence, given his susceptibility to deportation. As to the first, we have serious doubts as to whether the

---

[2] Although petitioner's petition and arguments blend petitioner's two legal theories—that he was prejudiced by ineffective assistance of counsel, and that his plea was involuntary—the two theories are distinct. To establish ineffective assistance of counsel as a basis for post-conviction relief, petitioner must prove that "defense counsel's performance fell below an objective standard of reasonableness informed by prevailing professional norms," and that but for counsel's performance there is a reasonable probability that the result of the proceeding would have been different. In re Combs, 2011 VT 75, ¶ 9, 190 Vt. 559, 27 A.3d 318 (mem.) (quotation omitted). The evidence and analysis concerning the latter, "prejudice" prong—the only prong at issue on appeal—overlaps considerably (though not completely) with the evidence and analysis underlying the distinct claim that petitioner's plea was not knowing and voluntary. Because we vacate petitioner's conviction on the basis that the plea was not knowing and voluntary, we do not separately analyze the ineffective-assistance claim. We likewise do not reach the question of whether the PCR court's remand to the criminal division for further consideration, without actually vacating the judgment, would be a proper remedy for the error that the PCR court found tainted the sentencing.

trial court's findings are supported by the evidence.  As to the second, we conclude that the trial court's findings and conclusions compel vacation of his conviction and guilty plea.

### I.  Information as to Likelihood of Deportation

¶ 15.    Petitioner argued in part that his plea was based on a misunderstanding that his chances of deportation were high.  The PCR court wrote, "Although he thought the chances were very high that he would be deported, there was still a risk that it would not happen at all or any time soon, and he was aware of that risk and decided to take it."  The court was satisfied that defense counsel had given petitioner "accurate" information as to the risk that petitioner may not be deported.

¶ 16.    We are skeptical that the evidence can support such a conclusion.  On the record at the change-of-plea hearing, defense counsel stated that petitioner would "most likely" be deported. At the PCR hearing, defense counsel testified that she informed petitioner that government immigration attorneys told her that he would be taken into federal custody and deported after he entered his change of plea and the appeal period lapsed.  She also testified that because this represented a change of position from the original information she received—that he would be taken into federal custody at the time of his change of plea—she conveyed to petitioner uncertainty as to whether ICE would follow through with what they had represented.  She told petitioner that there was nothing binding the federal authorities.[3]

¶ 17.    This evidence could support a finding that defense counsel conveyed to petitioner that the timing of his anticipated deportation was unclear.  It might even support a finding that she conveyed to petitioner that <u>whether</u> he would be deported was not entirely certain.  But there is an

---

[3]  Defense counsel also testified regarding an email she sent to the state's attorneys after sentencing, reflecting that she had learned from ICE that "he will be deported at the end of his minimum, currently 12 years."  She did not testify as to who made this claim, and the record does not reflect that the message was ever passed on to petitioner or to the court.  For that reason, it has no probative value as to petitioner's understanding in entering his plea.

expansive gap between defense counsel's statement on the record at sentencing that petitioner would <u>most likely</u> be deported, and the true (and ascertainable) state of affairs, as found by the PCR court, that given petitioner's ineligibility for release federal authorities would have no reason to deport him. This misunderstanding alone would likely compromise the voluntariness of petitioner's guilty plea. See <u>In re Stevens</u>, 144 Vt. 250, 256, 478 A.2d 212, 215 (1984) (explaining that to prove involuntariness, "petitioner must show evidence reasonably justifying his mistaken belief").

## II. Information Concerning Effect of Sentence

¶ 18. Even if counsel had accurately informed petitioner that it was unlikely that he would be deported, the evidence reflects that petitioner reasonably labored under another critical material misunderstanding: he had every reason to believe that if he was not deported, he would at some future time—likely around the time of his minimum sentence—be eligible for treatment or parole.

¶ 19. "[M]isinformation regarding parole eligibility may provide a basis for a successful attack on the voluntariness of a plea." <u>Moulton</u>, 158 Vt. at 584, 613 A.2d at 708. Petitioner bears the burden of establishing that he entered his plea "while reasonably relying on a material misunderstanding regarding his parole eligibility," and that "the misunderstanding worked to his prejudice." <u>In re Blow</u>, 2013 VT 75, ¶ 24, 194 Vt. 416, 82 A.3d 554 (quoting <u>Moulton</u>, 158 Vt. at 584, 613 A.2d at 708).[4] This material misunderstanding must be based on "objective evidence."

---

[4] We have not expressly adopted a distinct "prejudice" requirement in the context of our more general caselaw regarding the impact of reasonable, material misunderstandings on the voluntariness of a plea. See, e.g., <u>In re Kirby</u>, 2012 VT 72, ¶ 14, 192 Vt. 640, 58 A.3d 230 (mem.) (explaining that petitioner may be entitled to post-conviction relief if plea is obtained through "ignorance, fear or misunderstanding," if misunderstanding is "based on objective evidence which reasonably produced the misunderstanding" (quotation omitted)); <u>State v. Fisk</u>, 165 Vt. 260, 263, 682 A.2d 937, 939 (1996) (stating that to support withdrawal of plea, defendants "must provide objective evidence to demonstrate that [their] subjective misunderstanding was reasonable"); <u>Stevens</u>, 144 Vt. at 256, 478 A.2d. at 215 (stating that "we must determine if petitioner's mistaken belief . . . when judged by objective evidence, was reasonably justified under the circumstances").

Kirby, 2012 VT 72, ¶ 14 (quotation omitted).  However, "[a]n explicit promise is not required in order for a plea to be considered involuntary."  In re Cronin, 133 Vt. 234, 236, 336 A.2d 164, 166 (1975).

¶ 20.    We recognized in State v. Lumumba that, where a defendant is removable by immigration enforcement, DOC's policy is to withhold sex-offender treatment, and that a defendant who does not go through treatment will serve the maximum sentence.  2014 VT 85, ¶ 25, 197 Vt. 315, 104 A.3d 627.  Therefore, as Attorney Paul Volk, testifying as an expert on the applicable standard of care, testified: "essentially what the judge did . . . would leave [petitioner's] fate entirely to whether or not the Department of Homeland Security was ever actually going to remove him."  If it did not, petitioner's sentence would not be a twelve-year minimum but "effectively a life sentence without the possibility of parole."  Lumumba, 2014 VT 85, ¶ 21.

¶ 21.    There is no evidence that defense counsel ever made petitioner aware of DOC's policy or brought it to the attention of the court at the change-of-plea or sentencing hearings.[5] Rather, at sentencing, all parties and the judge appeared to believe it was possible for petitioner to receive treatment and to be paroled after his minimum sentence.  The sentencing judge stated:

> The choice of whether to complete available treatment programs is one for [petitioner] to make.  And once he is in jail he may well conclude that he can benefit from the active and successful participation in such a program.
>
>  . . . .
>
> Irrespective of any . . . immigration consequences, it is the intent of this Court that [petitioner] serve the full sentence imposed, and that

We have done so in the above cases involving misinformation as to parole eligibility.  As a practical matter, the question of "prejudice," and the question of materiality may be one and the same—would a defendant have done anything different in the absence of the misinformation.

[5] After petitioner was sentenced, counsel wrote in an email that "no matter what time he's in, DOC won't do any programming with him because of the ICE detainer."  Although the email was discussed throughout the PCR proceedings, this portion of the email was not.  There is no evidence that counsel had this information before sentencing, or that she shared it with petitioner if so.

9

> he not be released until such time as he has successfully completed any required treatment program and is deemed to no longer be a threat to public safety.

The PCR court recognized that these statements reflected an incorrect assumption regarding petitioner's parole eligibility. As discussed below, this misunderstanding meets all the requirements outlined in Moulton and reaffirmed most recently in Blow. See Blow, 2013 VT 75, ¶ 24 (quoting Moulton, 158 Vt. at 584, 613 A.2d at 708).

¶ 22. Petitioner's plea was based on a material misunderstanding as to the sentence that he was agreeing to. In different circumstances, we have rejected voluntariness challenges based on misunderstandings of parole eligibility, reasoning that "information concerning parole eligibility is inherently imprecise owing to any number of variables such as the petitioner's conduct while in prison, changes in the makeup or philosophy of parole boards, and changes in the law." Blow, 2013 VT 75, ¶ 26 (quoting In re Shaimas, 2008 VT 82, ¶ 9, 184 Vt. 580, 958 A.2d 646 (mem.)). However, this is not a situation where the parole laws changed after sentencing, or where a petitioner's own future actions will affect parole eligibility. This is a situation where a defendant, due to established policies beyond his control, would be categorically ineligible for parole. See Lumumba, 2014 VT 85, ¶ 25 (holding that court abused its discretion in "fail[ing] to consider whether the sentence issued would, in fact, be effectively a determinate life sentence"). Petitioner had every reason to believe that if he was not deported, he was agreeing to a twelve-year minimum; in fact, he faced a life sentence with no possibility of parole.[6]

---

[6] We recognize that in Moulton we declined to impose an affirmative requirement, not mandated by Vermont Rule of Criminal Procedure 11, that defendants be advised by their counsel of how and under what circumstances parole eligibility would be affected by continued denial of criminal responsibility. 158 Vt. at 583-84, 613 A.2d at 708. For the reasons set forth above, we conclude this case is governed by the second holding in Moulton that misinformation regarding parole eligibility may provide a basis for a successful attack on the voluntariness of a plea. Id. at 584-85, 613 A.2d at 708. Accordingly, we need not decide whether the categorical nature of petitioner's ineligibility for parole in this case, regardless of his own future choices or actions, distinguishes this case from Moulton with respect to counsel's affirmative duty to advise a

¶ 23. Petitioner's belief was reasonable. Given clear statements by the sentencing court that he would be eligible for rehabilitation programming, and the lack of any other guidance from counsel, petitioner had every reason to believe that if he was not deported, he could eventually undergo treatment and become eligible for parole. He had no reason to expect that he would be categorically excluded from programming or the eventual possibility of release. The court's statements during the change-of-plea hearing provide the "objective evidence of reasonable confusion" necessary to render a plea involuntary. In re Stevens, 144 Vt. at 256, 478 A.2d at 215.

¶ 24. Finally, the misunderstanding "worked to [petitioner's] prejudice." Blow, 2013 VT 75, ¶ 24. The PCR court reasoned that there "could not have been any prejudice" to petitioner because there is no evidence that, with better legal advice, he would have taken his chances at trial, and no evidence that the state's attorney would have offered a better deal. We reject the PCR court's reasoning for two reasons.

¶ 25. First, the favorability of a plea bargain alone is not determinative. "To ensure due process, the standard of review on the voluntariness of a plea cannot be that there were good reasons for the defendant to enter the plea, even if he did not know what rights he was giving up." In re Calderon, 2003 VT 94, ¶ 21, 176 Vt. 532, 838 A.2d 109 (mem.) (Johnson, J., dissenting). In this case, the prejudice to petitioner is clear: due to the misunderstanding, he agreed to a materially harsher sentence than he or anyone else thought he was agreeing to—a life sentence instead of twelve years to life. The PCR court correctly concluded that this misunderstanding "reasonably could have affected [the sentencing court's] analysis." It is clear to us—and the State does not argue otherwise in its brief—that petitioner's identical misunderstanding reasonably could have affected his decision to enter a guilty plea pursuant to the terms of this agreement. Cf. In re Williams, 2014 VT 67, ¶ 29, 197 Vt. 39, 101 A.3d 151 (explaining that prejudice prong for

similarly situated defendant that a guilty plea would lead to an effective sentence of life imprisonment without the possibility of parole.

11

ineffective assistance of counsel satisfied by "reasonable probability" of different outcome). Not just the sentencing proceedings, but the entire bargaining process, was affected by the mistaken belief that petitioner could become eligible for parole after twelve years.

¶ 26. Second, we are not persuaded by the PCR court's finding that there was no evidence that the state's attorney could have been persuaded to agree to a more favorable plea agreement or that the court would have accepted it. The record reflects that the state's attorney was confident that petitioner would be deported well before his minimum sentence, and that the State was satisfied with what it apparently believed would be a twelve year minimum. The evidence does not support the inference that the state's attorney sought an effective sentence of life imprisonment without the possibility of parole. Likewise, the sentencing court urged petitioner to participate in treatment, and anticipated that he could become eligible for release after twelve years, as the PCR court explicitly found. Therefore, the sentencing court was willing to accept an agreement that did not effectively amount to a life sentence, and in fact believed that it was approving such a sentence.

¶ 27. Petitioner reasonably relied on a material misunderstanding regarding his parole eligibility, and that misunderstanding worked to his prejudice. Thus, his conviction must be vacated.

The order of the civil division is reversed, petitioner's conviction is vacated, and the case is remanded to the civil division with instructions to refer the case to the criminal division for further proceedings.

FOR THE COURT:

_____
Associate Justice

12